## No. 2923.

### EUGENE E. LEVY *v*. PIKE, BROTHER & CO.

The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property.

Where the deposit was a gratuitous one, and where the abstraction of the thing deposited seems to have been one of those bold and adroit acts which are carried out successfully in defiance of ordinary prudence and diligence, and the possibility of which is seen only after its accomplishment, the depositary is not liable, as he would be if the loss arose from gross or inexcusable negligence on his part.

APPEAL from the Seventh District Court, parish of Orleans. *Collens*, J. (Special jury trial.) *Hyams & Jonas*, for plaintiff and appellant. *Hays & New*, for defendants and appellees.

WYLY, J. The plaintiff, a money broker of the city of New Orleans, sues the defendants, who are engaged in a banking business, for $7504 54, the value of the contents of a tin box deposited by

plaintiff with the defendants for safe keeping, which was stolen by thieves on thirteenth day of December, 1869, and for the further sum of $400, the reward paid to recover a portion of the contents of said box, not included in the above estimate of loss, and also $100 costs of advertising the robbery. The plaintiff alleges that this loss was occasioned by the negligence and want of care of the defendants, the depositaries.

The defendants deny that there was a want of care on their part, and aver that they exercised the same attention in preserving the tin box of plaintiff they exercised in preserving similar boxes belonging to other depositors, and the same they exercised in keeping their own property; and this attention and method of acting were well known to plaintiff, who acquiesced in and took advantage thereof for his own convenience.

On the verdict of a special jury, the court gave judgment for the defendants, and the plaintiff appeals.

It appears that during the year 1869 the plaintiff deposited his money and kept his account with defendants; he also deposited with them every night the tin box in which he kept his stocks, bonds, scrips, uncurrent money, warrants, jewelry, gold, and marketable securities of every description.

He was in the habit of delivering the box to them between 4 and 5 P. M., every evening, and calling for it every morning, between 8 and 9 A. M.

On receiving the box, the defendants would give plaintiff a metallic check, "No. 1786," on which, besides, was engraved these words: "Pike, Lapeyre & Brother, deliver to bearer," and the box would only be returned to the plaintiff on presentation of this check.

It was the custom of the defendants to take care of similar boxes for their depositors, and sometimes for those who did not keep bank accounts with them. They had a large vault in the rear of their building, in which over a thousand boxes of a similar character, belonging to various persons, were deposited for safe keeping.

It is proved that the plaintiff sustained the loss complained of by reason of the loss of the tin box, which was deposited with defendants for sake keeping.

It appears that on the morning of the thirteenth of December, 1869, before business hours, the receiving teller of the defendants brought the box in question, with several others, from the vault in the rear of the building. and placed it on or under a table, on the side of the office occupied by him, for the purpose of having those boxes convenient to be delivered to their owners during business hours, and for the purpose of saving the time that would be consumed in going to the vault for them when called for.

At this time, there was no one in the office, except the paying teller, who occupied the opposite side, with his back to the receiving teller, and who was engaged preparing and watching the money lying before him for the day's business. The front door was partly open, and the door to the office of the president of the bank, on the same side of the bank, that was occupied by the receiving teller, was not locked; and the door from the president's room leading into the bank, near the table, where the boxes were placed, was also unlocked.

In this condition of things, after placing the boxes on or near the table as before said, the receiving teller had occasion to go to the privy in the back yard, and was absent from the office ten or fifteen minutes. On his return, it was found that the box of the plaintiff had been stolen. No one, as before said, was in the bank, except the paying teller, who was occupied, with his back to the table, and the part of the office occupied by the receiving teller. It is probable that the thief or thieves entered the front door, and finding the receiving teller not at his place, and no one else in the office, except the paying teller, whose back was turned, they passed into the president's room, and from there into the bank through the unlocked doors referred to, and got the tin box of the plaintiff from the table, or the place where it was placed near the table, and made their escape with it, before the return of the receiving teller to the office.

It is shown that frequently the plaintiff, when depositing the box of an evening, saw it placed on the table referred to, and on one occasion he entered the bank and placed it there himself; but on such occasions there were always several clerks and other persons in the bank, so that there was little or no danger of thieves stealing it from the table where it was temporarily left.

The object of depositing the tin box was undoubtedly for the purpose of having it kept safely in the large vault, which the defendants had prepared for their customers, and where a thousand valuable boxes were kept every night.

The plaintiff had a good bank account with the defendants, and they doubtless found it profitable to receive cash deposits from their customers. It is not probable that the defendants prepared this large vault, the numerous metallic checks, and made such ample preparation to receive and take care of boxes containing valuable articles, scrips, bonds and marketable securities of every kind merely as an act of disinterested benevolence. On the contrary; it is shown that the owners of nearly all the boxes kept their currency deposited with the defendants; and we believe the object of this vault, holding out to business men a safe place to keep their valuable boxes, was to induce the deposit of money in the bank of the defendants.

Their object was doubtless to increase their deposits and, of course,

enhance their profits; and to accomplish it they held themselves out to the business community as prepared to take care of their valuable boxes.

The taking care, therefore, of these boxes was a part of the business of the bank, by which they doubtless induced cash deposits and made considerable profits. We, therefore, do not regard the deposit in question as only a gratuitous one. Something more than no gross negligence or fraud was expected from the defendants. They were not merely gratuitous bailees, receiving a voluntary deposit, and liable only for "gross negligence or fraud;" they were bound to exercise such diligence as prudent bankers would exercise in taking care of and preserving a thing of that character deposited with them.

Even were the defendants only bound for gross negligence, we think they were grossly negligent in this case. "In determining what gross negligence is (says Judge Story) we must take into consideration what is the thing bailed. * * * Care and diligence are to be proportioned to the value of the goods, the temptation and facilities of stealing them, and the danger of losing them." And to illustrate it, he says: "If a bag of apples were left for a short time without a guard it would be no more than ordinary neglect, but if the bag were of jewels or gold, it would be gross negligence."

The box in question was very valuable; it was a great temptation to thieves coming into the bank, and finding the doors leading to it unlocked, and the receiving teller absent from his place, with no one to protect it, the paying teller being engaged in his own duties and his back turned to the box. We think it was gross negligence for the receiving teller to bring from the vault the tin box in question, and leave it unguarded, with the doors unlocked. And for this negligence the defendants, his employers, are responsible.

It is therefore ordered that the judgment herein be annulled; and it is further ordered that the plaintiff recover of the defendants $8000 54, with legal interest thereon from tenth January, 1870, and costs of both courts.

---

## On Rehearing.

TALIAFERRO, J. From a re-examination of the facts of this case, we think it is shown that the deposit was a gratuitous one. Then the depositary is not to be held to that rigid accountability he would have been had the contract been one of hiring, or had the deposit been made at the request of the depositary, or solely for his advantage, or had it been expressly agreed that he should be answerable for all neglects. C. C. 2938. None of these conditions appear to have entered into the agreement of the parties in this case. "The depositary is bound to use the same diligence in preserving the deposit that he uses in pre-

serving his own property." C. C., article 2937. We do not find that the depositary in this instance has failed to comply with the obligation imposed upon him by this article of the Code, nor can we say, from all the circumstances shown, that the loss arose from gross or inexcusable negligence on his part. The abstraction of the box seems to have been one of those bold and adroit acts which are occasionally carried out successfully in defiance of ordinary prudence and diligence. Being accomplished, its possibility is seen. Before it was attempted, its probability would scarcely have been conjectured. Seeing now how it might have been prevented, is no sound reason for contending that there was not proper diligence used to prevent it.

A review of the law and evidence of the case brings us to the conclusion that our former decree should be changed.

It is therefore ordered that the judgment first rendered by this court in the present case be annulled and set aside. It is now ordered that the judgment of the district court be affirmed, with costs.

Mr. Justice Wyly adheres to the original opinion.