# CHARLESTON.

MARTIN HILL, JR. *v.* ANSTED NATIONAL BANK.

Submitted May 15, 1923.   Decided February 19, 1924.

1. PLEADING—*Declaration Against Bailee, Relying on Negligence, Sounds in Tort.*

   A count in a declaration in case against a bailee for loss of goods which does not positively aver defendant's undertaking or consideration therefor, but relies for recovery upon alleged negligence of defendant, will be considered a count in tort, although it recites a special contract of bailment out of which the duty alleged to have been violated arose. (p. 652).

2. EVIDENCE—*On Question of Bailment and Consideration Therefore, Evidence of Solicitation by Bank for Special Deposits Held Admissible to Show General Policy.*

   In a suit by a customer against a bank for the loss of a special deposit stolen from defendant's vault, which is admittedly of little, if any, protection against robbery, where the plaintiff testifies that the bank induced the deposit by representing that the same would be kept in a burglar-proof safe, the evidence of other customers that they had made similar special deposits at the solicitation of the bank is proper as tending to prove a systematic business policy on the part of the bank; thus furnishing a consideration for the bailment and imposing upon the defendant the duty of providing reasonable equipment for the safe-keeping of such special deposits. (p. 655).

3. SAME—*In Suit Against Bank for Loss of Special Deposit, Evidence That Other Banks Have Kept for Customers Special Deposits of Same Character Held Inadmissible.*

   It may not be shown that other banks have kept for their customers special deposits of the same character in vaults similar in construction to defendant's vault, where it does not appear under what circumstances such deposits were made. (p. 655).

4.  BAILMENT—*Proof That Bailee Exercised Same Degree of Care Given to Own Goods of Similar Character Prima Facie, but Not Conclusive, Evidence of Diligence.*

    Proof that a bailee has exercised with reference to the bailment the same degree of care given to his own goods of a similar character is *prima facie*, but not conclusive, evidence of diligence. (p. 656).

5.  BANKS AND BANKING—*Banks Holding Themselves Out as Having Special Facilities for Safekeeping Articles of Value Held Not Accommodation Bailees.*

    Banking institutions receiving articles of unusual value, and holding themselves out as having special facilities for their safe-keeping, are not accommodation bailees; the compensation being indirect benefits. (p. 657).

6.  SAME—*Bank as Bailee Bound to Exercise That Care Prudent and Diligent Banker Would Give Own Property.*

    Where a bank has solicited and taken War Savings Stamps or other valuables for safe-keeping, it owes a duty of exercising the care that a prudent and diligent banker would give his own property of like value and importance. (p. 657).

Error to Circuit Court, Fayette County.

Action by Martin Hill, Jr., against the Ansted National Bank. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Hubard & Bacon* and *Price, Smith, Spilman & Clay,* for plaintiff in error.

*Dillon & Nuckolls,* for defendant in error.

LITZ, JUDGE:

In an action on the case the circuit court of Fayette county entered judgment upon a verdict in favor of plaintiff against defendant in the sum of $943.37, for the value of $1000.00 in War Savings Stamps belonging to the plaintiff and stolen from the vault of defendant while in its possession for safe-keeping. The defendant has brought the case here for review.

In January, 1918, defendant, a national banking institution, through its president, W. L. Burruss, sold to plaintiff, a customer of the bank, $1000.00, face value, of War Savings

Stamps issued by the Federal Government, due and payable January 1st, 1923. The plaintiff claims that at the solicitation of the defendant's president, who represented they would be kept in a fireproof and burglar-proof safe, he returned the stamps to the bank for safe-keeping; receiving from it at the time, as evidence of the bailment, a receipt stating:

"Jan. 19th, 1918.
"Mr. Martin Hill, Jr.,
    Victor, W. Va.
"Dear Sir:
    "This is to acknowledge the receipt of War Savings Certificates to the amount of $1000.00 which we will place in our vaults, same to have the same protection as we give our own bonds, securities cash & etc. But further than this we do not assume responsibility, that is to say, should burglars blow open the *safe* and steal the bonds, we will not be responsible."

It appears that the defendant then kept in the conduct of its business a steel vault, which was about six feet wide, seven feet high and twelve feet long, equipped with fire-proof double doors, but secured only by a single combination lock. This vault was neither in fact nor represented to be burglar-proof. The defendant also maintained within the vault a burglar-proof steel safe, spherical in form, and having an inside diameter of twenty-six to twenty-eight inches. Other customers who under similar circumstances had purchased from, and deposited with, the bank War Savings Stamps, also testified that the defendant, through its president, had solicited these deposits, representing that they would be kept in a secure place.

On the night of April 1st, 1919, defendant's vault was broken into and robbed of part of its contents outside the steel safe, including the plaintiff's War Savings Stamps, $24,-000.00 in War Savings Stamps of other customers, and $800.00 in cash belonging to the bank. In the vault outside of the steel safe were also $21,000.00 negotiable paper, the property of defendant, and $7,000.00 collateral securities held by it; none of which was taken. The steel safe contained, among other valuables, $9,000.00 cash belonging to defendant, and $263,000.00 Liberty Bonds.

The defendant claims that there was no room in the safe for plaintiff's stamps, and that Liberty Bonds rather than War Savings Stamps were kept therein as the former were of less bulk in proportion to value. Burruss, the president, states as another reason for keeping the Liberty Bonds in the safe that they were negotiable while the stamps, according to the Government circulars, could be collected only by the one who had signed the certificates. But the stamps had never been registered and the loss of them, therefore, meant loss to the plaintiff of their value. Defendant denies that it suggested that the stamps be left with it for safekeeping, or that it agreed to keep them in a burglar-proof safe or vault. It admits, however, through its president, advising purchasers who desired to leave their stamps for safe-keeping, that this property would be given proper care.

The misjoinder of actions is the basis of defendants demurrer to plaintiff's declaration, the overruling of which constitutes the first assignment of error.

The declaration contains two counts, the first of which is conceded to state an action in tort, conformable to the writ in case. Defendant contends, however, that the second count is in form ex contractu, and if so, cannot, of course, be joined with a count ex delicto. This count copies the receipt, setting forth the bailment, avers the duty of defendant to have kept the stamps in a burglar-proof safe and that they had been stolen and lost by and through the gross negligence and wrongful conduct of defendant in permitting the same to be and remain in an insecure and unsafe place; but does not directly allege an undertaking by the defendant or a consideration for the bailment.

In general, an action is not ex contractu where the contract is pleaded as inducement only, showing the relation out of which the duty alleged to have been violated arose. 21 R. C. L. 494.

A bailor may sue in case where the subject matter of the bailment has been misused by the bailee, or where a loss or injury of the property has occurred from the latter's negligence. Case may be brought for any breach of the bailment, implied by law from the existence of the relation of bailor and

bailee, and if the duty alleged to have been violated is one that arises out of the relation it is no objection to an action in case that the performance of the duty has been expressly stipulated for.  6 C. J. 1152.

A complaint in an action against a common carrier alleging in general terms a breach of contract safely to carry certain articles of freight, but further alleging, particularly and specifically, that the defendant so negligently and carelessly conducted in regard to the same that they were greatly damaged, states a case of action in tort.  *Bowers* v. *Richmond R. Co.,* 107 N. C. 721, 12 S. E. 452; Hutchinson on Carriers, Secs. 744, 749.

In *Ferrill* v. *Brewis' Admr.,* 25 Gratt. 765, where action on the case was brought to recover for certain notes entrusted to defendant's decedent for collection, it is held that the court will treat a count in a declaration as partaking of the nature of the action; so that if the action is *ex delicto,* the count will be intended as *ex delicto* also, unless there be something in its form and structure which plainly forbids such intendment. The first count of the declaration there under consideration averred in general terms the contract of bailment, whereby the bailee accepted the notes to be collected by him and paid to the bailor or otherwise applied to his use; and further averred that the bailee had failed to restore the notes or pay the proceeds therefrom to the bailor.  The court in its opinion says:

> "In determining the character of the first count in the declaration here, it is proper to bear in mind there is a class of cases (among them that of bailment) in which the foundation of the action springs out of the privity of contract between the parties, but in which nevertheless, the remedy for the breach or non-performance is indifferently in assumpsit, or in case upon tort.  * * *  In all these cases the contract is of course referred to, to ascertain the rights of the parties and the measure of redress; but the wrongful act of the defendant is relied upon as the gravamen of the action.  * * *  The present count, however, whatever it may be, is clearly not in assumpsit.  No consideration is laid for defendant's undertaking, and no averment is made of a promise or agreement on his part to return

the notes when demanded. The plaintiff has treated the refusal or failure to return them as a breach of duty amounting to a tortious negligence. This he was at liberty to do. The count must therefore be considered in case and not in assumpsit.''

Likewise, the count under consideration here contains no direct or positive averments of promises on the part of the defendant, nor is any consideration therefor stated. An express promise must be laid in the count to render it in form *ex contractu*. The mere recital of a contract which contains a promise will not satisy the rule. Burke's Pleading and Practice; *Cooke* v. *Simms,* 2 Call. 309; *Woody* v. *Flournoy,* 6 Munf. 506; *Wheeling Mound & Foundry Co.* v. *Wheeling Steel & Iron Co.,* 62 W. Va. 288. The count is also defective as a special count in assumpsit, for failing to set out a consideration for defendant's undertaking. Burke's Pleading and Practice, (2d Ed.), p. 130; *Morgantown Bank* v. *Foster,* 35 W. Va. 357, 13 S. E. 996; *Pa. R. R. Co.* v. *Smith,* 106 Va. 645, 56 S. E. 567.

The defendant denies liability by reason of the National Banking Act, providing:

"No national banking association shall at any time be indebted, or in any way liable, to an amount exceeding the amount of its capital stock, at such time actually paid in and remaining undiminished by losses or otherwise, except on demands of the following nature: (1) notes of circulation; (2) monies deposited with or collected by the association; (3) bills of exchange or drafts drawn against money actually on deposit to the credit of the association, or due thereto; (4) liabilities to the stockholders of the association for dividends and reserved profits; (5) liabilities incurred under the provisions of the Federal Reserve Act; (6) liabilities incurred under the provisions of the War Finance Corporation".

In this connection, the defendant calls attention to the facts that it has a paid in capital stock of $35,000.00, and at the time of accepting plaintiff's stamps it held for safe-keeping $500.00 in War Savings Stamps and $75,000.00 Liberty Bonds belonging to others. There is, however, nothing in the

record to show that the indebtedness of the bank exceeds its
liability or that it ever in fact became liable for any amount
of the $75,000.00 in Liberty Bonds, none of which is claimed
to have been lost in the robbery involved in this case.   The
acceptance of special deposits is not only within the privileges
of the bank, but is incidental to and promotive of its general
business.   *Levi* v. *Pike*, 25 La. Ann. 630.

Admissibility of the testimony of other patrons showing
that at the solicitation of defendant they had deposited with
it War Savings Stamps, is questioned, on the ground that
such evidence involves transactions with third parties in no
wise legitimately connected with the issues in the case.   We
think this evidence appropriate as tending to establish a
systematic business purpose on the part of defendant to ob-
tain these special deposits; which would serve as a considera-
tion for the bailment.   The object of the bank was doubtless
to increase its deposits and enhance its profits; and to accom-
plish this it held itself out to its customers and the business
community as prepared to take care of such securities with the
view that the proceeds therefrom would be added to its de-
posits.

Complaint also is made that the trial court improperly ex-
cluded certain evidence tending to show that other banks kept
War Savings Stamps for their patrons in vaults similar in
construction to the vault of defendant.   This evidence was
properly rejected, it not being shown under what circumstan-
ces the deposits were received, nor that the keeping of special
deposits in an insecure vault was such an established custom
or practice as indicating a recognized criterion of care.  As be-
fore stated, it is a conceded fact that the vault was but little,
if any, protection against robbery.

From the testimony of W. L. Burress, president of the
bank:

"Q.   The vault was only intended as a protection against
fire, wasn't it?

"A.   Fire protection; never claimed to be anything else,
sir.   It was fire-proof, was all we ever claimed for it."

It is further claimed that the jury was misdirected in
each of the four instructions given for the plaintiff.   The

first two of these instructions in effect tell the jury that if they believe the defendant solicited the keeping of plaintiff's War Savings Stamps, and agreed to give to them the same protection it gave to its own property, and that it kept in its vault a steel safe in which was stored its cash and other securities, but that the plaintiff's War Savings Stamps were not kept in the safe, and by reason thereof were stolen, then such facts may be taken into consideration in determining defendant's liability.

The third instruction simply tells the jury that if gross negligence has been shown on the part of defendant, plaintiff is entitled to recover the value of the stamps as of the date demand was made therefor, with interest.

The fourth instruction states that while defendant may not be held liable unless it has been guilty of gross negligence the jury may determine from all the evidence whether such negligence has been shown.

There can be no just criticism of any of these instructions, as they limit the defendant's duty to the lowest degree of care imposed by the relation of bailor and bailee.

The special agremeent by the defendant to give to the plaintiff's War Savings Stamps the same protection he would afford his own property of a similar nature creates no higher degree of care than is implied by law from the mere relation of bailor and bailee.

It has been stated to be the general rule that a gratuitous bailee must exercise the same care with reference to the bailment that an ordinarily prudent and careful person in his situation would bestow on his own property of the same character; or that in order to avoid the imputation of bad faith the depository must exercise the degree of care which he uses toward his own property of a similar kind.  6. C. J. 1127.

The defendant tendered six instructions for the jury's guidance, all of which, except the last, were refused.  These instructions present two propositions:

(1)   That a gratuitous bailee is not liable, in the absence of special agreement, where he has exercised the same degree of care over the subject of the bailment given to his own property of similar character.

(2)   That. if there is a special agreement covering the bailment with which the defendant has complied, the plaintiff can not recover.

The latter theory was fully set forth in defendant's instruction No. 6 given to the jury. The instruction involving the first proposition was rightly rejected. The weight of modern authority holds that the fact the bailee has exercised over the property of the bailment the same degree of care given to his own goods of a similar character is merely *prima facie* evidence of diligence  and open to rebuttal by proof that the bailee was negligent in the care of his own property.   6 C. J. 1161.

The jury was well warranted in finding that defendant had not exercised reasonable diligence. As before stated, the vault afforded little, if any, protection to valuables against robbery. The receipt evidencing the bailment, which exempts the defendant from liability in event the property is stolen by burglars blowing open the *safe,* is consistent with the defendant's duty under its representation that the stamps would be kept in the safe. Furthermore, banking institutions receiving articles of unusual value, and holding themselves out as having special facilities for their safe-keeping, are not accommodation bailees; the compensation being indirect benefits. In such case they should exercise the same care toward the subject of the bailment that a prudent and diligent banker would give his own property of like value and importance. *Trustees of Elon College* v. *Elon Banking & Trust Co.,* (N. C.) 109 S. E. 6.

It is not sufficient defense that the defendant had solicited deposits of more Liberty Bonds and War Savings Stamps than its safe would accommodate. The safe was ample when plaintiff's stamps were accepted, the defendant then having only $500.00 in War Savings Stamps and $75,000.00 in Liberty Bonds on special deposit.

We, therefore, affirm the judgment of the circuit court.

*Affirmed*