# CHARLESTON.

STATE, FOR THE USE OF, *etc. v.* R. M. HUDSON PAVING & CONSTRUCTION CO., *a Corp.*

Submitted May 22, 1923.    Decided March 11, 1924.

1. ACTION—APPEAL AND ERROR—*Consolidation of Suits Discretionary; Judgment or Decree Consolidating Suits Not Disturbed Unless Prejudicial Misuse of Discretion Appears.*

   The consolidation of suits in law and equity alike is a matter addressed to the sound discretion of the court; and to warrant reversal of a judgment or decree on that ground it must appear that such discretion has been misused to the prejudice of the party complaining. (p. 612).

2. JURY—*Resident Not Disqualified Because Magisterial District Interested.*

   In the trial of a case in which a magisterial district is interested an inhabitant or taxpayer of the district is not disqualified as a juror on that ground alone. (p. 613).

3. DAMAGES—*Measure of Damages for Breach of Building or Construction Contract Stated.*

   Ordinarily, the measure of damages for the breach of a building or construction contract is the difference between the stipulated price and the cost of completing the contract at the time of the breach. (p. 613).

Error to Circuit Court, Randolph County.

Action by the State, for the use and benefit of the County Court of Randolph County, against the R. M. Hudson Paving & Construction Company and the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant last named brings error.

*Modified and affirmed.*

*Simms & Staker* and *C. O. Strieby,* for plaintiff 'in error.
*W. B. & E. L. Maxwell,* for defendant in error.

LITZ, JUDGE:

The defendant, United States Fidelity & Guaranty Company, prosecutes this writ of error to the judgment of the circuit court of Randolph county entered on the verdict of a jury in favor of the plaintiff.

On August 12, 1916, the county court of Randolph county entered into five separate written contracts, of a common form, with defendant, R. M. Hudson Paving & Construction Company, a corporation, for the improvement of five several sections of roads in Leadsville District of that county. Each contract, which required the work therein undertaken by the company, as contractor, to be completed on or before November 1, 1917, was accompanied by the bond of the contractor and its surety, United States Fidelity & Guaranty Company, guaranteeing performance on the part of the former. The contractor proceeded with the work until the latter part of November, 1917, but without completing any one of the projects. On August 5, 1920, a separate action in debt was instituted against the defendants, R. M. Hudson Paving & Construction Company and United States Fidelity & Guaranty Company, in the name of the State of West Virginia, for the use of the County Court of Randolph county, on each of the five several contracts and accompanying bonds, for the recovery of damages resulting to the County Court by reason of the contractor's failure to complete the work.

One of these actions, tried March 21, 1921, in which plaintiff recovered judgment for $5,329.22, was affirmed on a

writ of error to this Court. *State* v. *Hudson Paving & Construction Company*, 91 W. Va. 387. The remaining four cases stood upon the docket awaiting the execution of writs of inquiry, from October rules, 1920, to October 23, 1922. On October 3, 1922, the trial of each case was set for October 23d. When the cases were called on the trial date, plaintiff moved their consolidation and trial as one cause. The appellant declined to appear to the motion, as a rule was thereupon issued against both defendants and served upon counsel of appellant at the bar of the court, requiring defendants to show cause, if any they could, why the four several actions should not be consolidated and heard together as one case. The appellant then filed its answer to the rule, setting up in resistance thereto: (a) that the rule had not been properly served upon either of the defendants; (b) that appellant was not prepared to try the actions together; (c) that the large number of figures, computations and calculations involved in all of the cases would be confusing to the jury; and (d) that consolidation would be in excess of judicial discretion. The cases were, however, consolidated and proceeded with to trial, resulting in a verdict and judgment for plaintiff in the sum of $119,800.43.

The appellant relies on the following grounds for reversal:

(1)   That it was improper to consolidate the four actions and immediately proceed to trial.

The consolidation of suits, in law and equity alike, is a matter addressed to the sound discretion of the court. *Bond* v. *National Fire Insurance Company*, 77 W. Va. 736; and to warrant reversal of a judgment or decree on that ground, it must appear that such discretion has been misused to the prejudice of the party complaining. *Castle* v. *Castle*, 69 W. Va. 400. The plaintiff could have sued on all of the contracts in one action. The four cases had been set for trial on the same day.

The jury was called upon, in fixing recovery, to find the difference between the stipulated prices of the work and those prevailing at the time of the breach of the contracts. The character of the work provided for being the same under each contract, the scale of prices adopted for ascertaining

damages under one is readily applicable to all.  So that the basis of recovery having been arrived at in one action, the assessing of damages in the several cases was but a matter of calculation.  For these reasons we think the trial court has properly exercised its judicial discretion in consolidating and trying all the actions together.

(2)  That the trial court improperly overruled the motion of appellant to exclude from the jury box six jurors included in the panel of twenty who were citizens and taxpayers of Leadsville district.

It is said that these jurors, some of whom, sat in the trial, were vitally interested in the result of the suit.  A recovery for the plaintiff will go to the roads of that district.  Section 17, chapter 116, Code, provides:

> "In any suit or proceeding in which a county, district, school district, or municipal corporation is interested, or is a party, no person shall be incompetent as a juror because he is an inhabitant or taxpayer of such county, district, school district or municipal corporation."

Statutes like this have been uniformly upheld.  16 R. C. L. 279; Note 6 Ann. Cas. 964; *Smith* v. *German Ins. Co.,* 117 Mich. 270, 65 N. W. 236, 30 L. R. A. 368; *Minneapolis* v. *Wilkin,* 30 Minn. 142; *Com.* v. *Reed,* 1 Gray 472 (Mass.); *McClure* v. *Red Wing,* 9 N. W. 767 (Minn.); *Railroad* v. *Railroad,* 17 W. Va. 812.  We are, therefore, of opinion that this assignment does not present cause for reversal.

(3)  That the trial court erroneously fixed the time at which damages should be determined.

The appellant insists that the breach of the contracts occurred on November 1, 1917, the date named in the contracts for the completion of the work, or at most within a reasonable time thereafter, and not in 1919 as determined by the trial court.  Plaintiff replies that this question has been settled by the ruling in *State* v. *R. M. Hudson Paving and Construction Co.,* cited, involving the same facts.  In determining the date of breach, it was there said:

"The defendant insists that the damages should be ascertained as of November 1, 1917, the date fixed in the contract for the completion of the work, and its counsel claim that that is the time of the breach alleged in the declaration. We do not find that that date is the date alleged in the declaration. It avers that the work, according to the terms of the contract, was to be completed on that date and that the contractor did not then nor has it since that time completed the work. The county court did not treat the contract as having been broken on November 1, 1917. It did not do this until after it had served notice on the contractor and surety in February, 1919, to proceed with the work. Not until the time fixed in that notice had expired, and they had failed to respond to it and proceed with the work, did the court treat the contract as breached. The contract had been partly performed, and there is nothing in the record indicating that the contractor and its surety unequivocally repudiated the contract until after February, 1919. That date, it appears to us, is the date, upon the record, when the contract was broken, and the time at which the damages should be determined. The contract specifically gives to the County Court the right to extend the time of the completion of the work, and if it did not demand strict performance within the time limited, the defendants should not complain. They acquiesced in the delay."

The appellant would have the damages determined as of November 1, 1917, the cost at that time to complete the work being less than in April, 1919. It is here contended as in the former case that because of the expiration of the time provided for performance, the insolvency of the contractor, and permanent cessation of the work, the contracts were terminated on November 1, 1917, or within a reasonable time thereafter. But no new facts have been presented except the written request to appellant by the engineers of the county court in April and May, 1918, calling upon the former to have the contractor proceed with the work or see to the performance itself; and the reply of appellant repudiating the contracts. It was shown by the surety in this and the former case that on November 17, 1917, it had repudiated the contracts and denied liability under the bonds, on the ground that the

county court had changed the contracts by substitution of one kind of materials for that originally specified. So the request later that it recognize the contracts naturally brought a re-affirmance of its previously expressed position, and therefore effected no change in the situation. Continuing the discussion of this question, the opinion in the former case states:

> "The World War was in progress and the contractor excused itself from going on with the work by reason of railroad embargoes on road materials and on account of the scarcity of labor. The contractor became insolvent. It appears that this did not become known to the county court until the spring of 1918. In April, 1918, a representative of the contractor appeared at Elkins and endeavored to enter into a new contract to finish the road, but this was refused. The court directed its engineer to notify the contractor to proceed with the work and also to notify the surety to have the contractor complete its contract or that the surety itself take over and complete it. The matter drifted along till February, 1919, without result. The county court then notified the contractor and its surety to begin work under the contract within 10 days and to prosecute the work to completion at the earliest possible date and that unless notice should be received by the court within 15 days from the receipt by them of its notice that they or one of them intended to complete the work according to the contract, then the county court would complete the work as provided by the terms of the contract. The contractor and surety failed to go on with the work and the county court in April, 1919, advertised for and received bids on the work to be done, but deeming the bids too high, all bids were rejected."

Those connected with the contractor corporation had placed with the guarantee company collateral to protect it as surety on the bonds. These persons were, therefore, interested in avoiding a breach or repudiation of the contract, notwithstanding the insolvency of the corporation, which is not shown to have been solvent at any time. It seems also that the county court thought it would not be justified under war conditions in declaring a breach of the contracts. So there was no repudiation by any one acting in behalf of the county court or the contractor until the service of formal notice for that

purpose by the county court upon the contractor and the guarantee company in 1919. We feel that we should follow our former decision on this question, between the same parties, and so hold.

(4)    That the verdict is excessive, the jury having found the maximum damages shown by plaintiff's evidence.

The price of cement is the largest item of cost for materials to complete the work. It is contended by appellant that the jury awarded maximum damages under the evidence without crediting the cost of the cement with the value of the bags which would be returned by the contractor to the cement dealer. It is shown that the probable value of these bags would amount to a large sum. It is true the witnesses for the plaintiff, in fixing the cost of the cement required to complete the undertakings, made no reduction for returned sacks. Plaintiff's witness, Elliott, whose figures the jury seems to have adopted, explains this by stating that the value of the sacks was set off by the depreciation and maintenance cost of the machinery and equipment to be used in finishing the work.

(5)    That judgment was improperly entered against the appellant alone.

We find no objection or exception in the record on this point; besides it is proper for this court to modify the judgment in that respect, which will be so ordered.

We are, therefore, of the opinion to modify the judgment so as to take recovery against both defendants, and the judgment as thus modified will be affirmed.

*Modified and affirmed.*