EWING MONTGOMERY

*v.*

ORLIE FAY, *Administrator, etc.*

A. I. CLAWGES, TRADING AND DOING BUSINESS AS
CLAWGES TRANSFER,

*v.*

ORLIE FAY, *Administrator, etc.*

ORLIE FAY, *Administrator, etc.*

*v.*

A. I. CLAWGES, TRADING AND DOING BUSINESS AS
CLAWGES TRANSFER AND
EWING MONTGOMERY

(No. 10596)

Submitted January 26, 1954. Decided February 16, 1954

*William E. Glasscock,* for plaintiffs in error.

*Oakley J. Hopkins, Charles H. Haden, Glenn Hunter,* for defendant in error.

RILEY, JUDGE:

By an order entered on January 22, 1953, the Circuit Court of Monongalia County, over the objections and exceptions of A. I. Clawges, Trading and Doing Business as Clawges Transfer, and Ewing Montgomery, the defendants in an action of trespass on the case, instituted in the Circuit Court of Monongalia County by Orlie Fay, Administrator of the Estate of Thomas Orlie Fay, deceased, against A. I. Clawges, Trading and Doing Business as Clawges Transfer, and Ewing Montgomery, consolidated the three following actions of trespass on the case:

(1) An action of trespass on the case of Ewing Montgomery against Orlie Fay, Administrator of the Estate of Thomas Orlie Fay, deceased, instituted in said circuit court to recover damages for personal injuries alleged to have been sustained by the plaintiff by reason of a collision between an automobile owned and operated by the decedent, Thomas Orlie Fay, and a truck owned by A. I. Clawges, Trading and Doing Business as Clawges Transfer, and operated by the plaintiff, Ewing Montgomery, the agent, servant, and employee of A. I. Clawges;

(2) An action of trespass on the case of A. I. Clawges, Trading and Doing Business as Clawges Transfer, against Orlie Fay, Administrator of the Estate of Thomas Orlie Fay, deceased, instituted in the circuit court to recover damages to a truck owned by plaintiff Clawges, alleged to have been sustained by reason of a collision between an automobile owned and operated by the decedent,

Thomas Orlie Fay, and a truck owned by A. I. Clawges, Trading and Doing Business as Clawges Transfer, and operated by Ewing Montgomery, the agent, servant and employee of A. I. Clawges; and

(3) An action of trespass on the case of Orlie Fay, Administrator of the Estate of Thomas Orlie Fay, deceased, against A. I. Clawges, Trading and Doing Business as Clawges Transfer, instituted in the circuit court for the recovery of damages for the alleged wrongful death of the decedent, Thomas Orlie Fay, the son of the administrator, alleged to have been caused as the result of a collision between the automobile owned and operated by the decedent, Thomas Orlie Fay, and a truck owned by A. I. Clawges, Trading and Doing Business as Clawges Transfer, and operated by Ewing Montgomery, the agent, servant and employee of A. I. Clawges.

The three actions, as consolidated, were submitted to the jury at the regular January, 1953, term of the Circuit Court of Monongalia County, and the jury rendered the three following verdicts:

(1) In the law action of Ewing Montgomery against Orlie Fay, Administrator of the Estate of Thomas Orlie Fay, deceased, a verdict of not guilty;

(2) In the law action of A. I. Clawges, Trading and Doing Business as Clawges Transfer, against Orlie Fay, Administrator of the Estate of Thomas Orlie Fay, deceased, a verdict of not guilty; and

(3) In the law action of Orlie Fay, Administrator of the Estate of Thomas Orlie Fay, deceased, against A. I. Clawges, Trading and Doing Business as Clawges Transfer, and Ewing Montgomery, a verdict in plaintiff's favor, and against defendants, assessing plaintiff's damages at the sum of ten thousand dollars.

On March 27, 1953, an order was entered by the circuit court in the consolidated cases as follows:

(1) In the law action of Ewing Montgomery against Orlie Fay, Administrator of the Estate of Thomas Orlie

Fay, deceased, the circuit court entered a judgment of *nihil capeat per breve,* which judgment awarded costs to the defendant administrator;

(2) In the law action of A. I. Clawges, Trading and Doing Business as Clawges Transfer, against Orlie Fay, Administrator of the Estate of Thomas Orlie Fay, deceased, the circuit court entered judgment on the verdict of the jury of *nihil capeat per breve,* which judgment awarded costs to the defendant administrator; and

(3) In the law action of Orlie Fay, Administrator of the Estate of Thomas Orlie Fay, deceased, against A. I. Clawges, Trading and Doing Business as Clawges Transfer, and Ewing Montgomery, the circuit court rendered judgment on the verdict of the jury in favor of plaintiff administrator against the defendants in the sum of ten thousand dollars with costs from the date of the judgment until paid.

To the last-mentioned judgment alone A. I. Clawges, Trading and Doing Business as Clawges Transfer, and Ewing Montgomery prosecute this writ of error.

For convenience A. I. Clawges, Trading and doing Business as Clawges Transfer, will be designated hereinafter as "Clawges Transfer"; Ewing Montgomery as "Montgomery"; Thomas Orlie Fay, deceased, as the "decedent"; and Orlie Fay, Administrator of the Estate of Thomas Orlie Fay, deceased, as the "administrator."

In the brief filed by counsel for plaintiffs in error and in oral argument counsel assert six grounds of error, which for convenience may be summarized as follows: (1) It was error for the circuit court to order that the three separate actions embraced in this record should be consolidated and tried together, as provided by the order of January 22, 1953; (2) the verdict of the jury in the law action of the administrator against Clawges Transfer and Montgomery was contrary to the law and the weight and preponderance of the evidence; and (3) it was error for the circuit court to admit testimony of the administrator,

plaintiff in the law action of the administrator against Clawges Transfer and Montgomery, as to the annual earnings of the decedent covering a period of several years prior to the decedent's death.

In this order the grounds of error asserted by plaintiffs in error will be discussed in this opinion. Before doing so, it is well to note that the second ground of error was raised at the trial by the objections and exceptions of Clawges Transfer and Montgomery, defendants in the law action of the administrator against Clawges Transfer and Montgomery: (a) To the refusal to give the peremptory instruction to the jury to find for the defendant Montgomery; (b) to the refusal to give the peremptory instruction to the jury to find for the defendant, Clawges Transfer; and (c) to the refusal to set aside the verdict and grant Clawges Transfer and Montgomery, defendants in the law action of the administrator against Clawges Transfer and Montgomery, a new trial.

The propriety of the circuit court's action in consolidating the three actions at law presents an interesting question arising under Section 1 (a) and Section 3 (a) of Rule XIII of the Rules of Practice and Procedure for Trial Courts in West Virginia, which must be initially decided in the determination of this case. These sections read:

> "Section 1. (a) In any action at law, when such action is based on negligence, the court shall inquire whether or not another action is pending based on the same occurrence wherein defendant in the first action is plaintiff and plaintiff in the first action is defendant; and, if it appear that such other action is pending in the same court, the court shall order a consolidation of the two actions.

> \* \* \* \*

> "Section 3. (a) When such consolidation takes place the procedure before the jury shall be in the names of the parties, without the addition of the word plaintiff or the word defendant. Each party shall be regarded by the court as carrying the burden of proof of a plaintiff so far as the

right of recovery against the other party is concerned. The form of verdict shall be, 'We, the jury, find for . . . . and assess his damages at . . . . dollars.' or, 'We, the jury, find that neither party shall recover damages.' "

Counsel for plaintiffs in error asserts that as the above-quoted portions of Rule XIII of the Rules of Practice and Procedure for Trial Courts clearly indicate that the consolidation of actions may be effected only where the plaintiff in one action is the defendant in another action, both based upon the same act or acts of negligence, and that the consolidation effected by the trial court involved three and not two actions at law, Rule XIII of the Rules of Practice and Procedure for Trial Courts is inapplicable.

Plaintiffs in error also assert that the fact that different attorneys appeared for and represented Montgomery and Clawges Transfer as respective plaintiffs in two of the actions, and defendants in the third action, prejudiced the right of these defendants in the law action of the administrator against Clawges Transfer and Montgomery. In the latter regard it is asserted that it must have been evident to the jury from the consolidation that the "actual defendant" in the law action of the administrator against Clawges Transfer and Montgomery was an insurance carrier and not Clawges Transfer and Montgomery; otherwise, it is asserted, these defendants would have been represented by the same attorney. On this basis the attorney for plaintiffs in error asserts that he had no control over the testimony which was introduced in support of the claim for damages of the plaintiff Montgomery in the law action of Montgomery against the administrator. For example, counsel asserts that statements were made to the effect that the decedent was intoxicated at the time of the accident, and in support of such statements the only testimony introduced was that decedent had drunk a bottle or a bottle and a half of beer shortly before the collision. It is argued that the attorney for Clawges Transfer and Montgomery was powerless to prevent the statements made to the jury, and the testimony in the law action of

Montgomery against the administrator from being used in the law action to the judgment on which this writ of error is prosecuted, namely, the law action of the administrator against Clawges Transfer and Montgomery, and the testimony in this regard from being brought to the attention of the jury.

Here we are dealing with a rule applicable to all trial courts in this State promulgated by this Court. This Court in the case of *Wagner* v. *Edgington Coal Co.*, 100 W. Va. 117, 130 S. E. 94, in dealing with the interpretation by the Circuit Court of Ohio County of one of its own rules, which divided the work of the circuit court of that county into Part I and Part II and provided that petitions, notices and motions contemplating action by the court in cases not assigned and apportioned, except as otherwise provided, shall be docketed in Part I, held in the syllabus that: "Courts are the best exponents of their own rules; and the construction and application of such rules by the courts adopting and promulgating them will not be disturbed by the appellate court, unless the construction placed thereon is inconsistent with their language, or clearly in conflict with their true spirit and meaning, or violative of some organic or statutory law."

After the consolidation and before the trial of the three actions the parties thereto by their counsel entered into several stipulations, the second of which provided: "That Ewing Montgomery was in the employ*ee* of, the agent of, and was acting within the scope of his employment and under the authorization of A. I. Clawges, trading and doing business as Clawges Transfer at the time of said collision." By this stipulation the defendants, Clawges Transfer and Montgomery, acting through their attorney, admit, as the record discloses, the fact that for purposes of these actions, these defendants were one and the same party, and that neither could recover unless the other did, and that as Montgomery was clearly acting within the scope of his employment as the agent and employee of Clawges Transfer, both would be liable under the doctrine of *respondeat superior*, if Montgomery was negligent in the

operation of his truck as it proceeded along the highway over the brow of the hill in the direction from Fairmont toward Rivesville and Morgantown. See generally M. J., Master and Servant, Section 97.

The verdict of the jury in the law action of the administrator against Clawges Transfer and Montgomery, in finding for the administrator and against the defendants, and assessing the administrator's damages at ten thousand dollars, in that the jury could not have properly found for the plaintiff administrator if his decedent had been contributorily negligent, conforms to the verdicts of the jury in the law actions of Montgomery against the administrator and Clawges Transfer against the administrator, in which the jury found that the administrator was not liable for personal injuries to Montgomery and for damages to the truck of Clawges Transfer. Under the stipulation and facts, and as portrayed by this record, Clawges Transfer and its employee should be regarded for the purposes of the consolidation as one and the same party, that is, Montgomery and Clawges Transfer, plaintiffs, respectively, in the law actions of Montgomery against the administrator and Clawges Transfer against the administrator, and joint defendants in the law action of the administrator against Clawges Transfer and Montgomery.

As Rule XIII was promulgated for the purpose of expediting litigation, it should be liberally interpreted for the purpose for which it was promulgated, and so interpreting it, we are of opinion that the instant consolidation comes within the provisions of the rule.

The specific objections to the consolidation of the actions asserted by counsel for plaintiffs in error seem to be of no moment, in view of the fact that the jury was fully informed as to the purpose of the consolidation, and at the trial counsel had ample opportunity to cross examine the witnesses, and was not prejudiced in that regard.

Nor do we think that the fact that different attorneys represented the plaintiff Montgomery in the law action of Montgomery against the administrator and Clawges

Transfer against the administrator, and represented these parties as parties defendant in the law action of the administrator against Clawges Transfer and Montgomery, would cause the jury to surmise that the real party in interest in the latter action at law was not Clawges Transfer but an insurance carrier.

We hold that the instant consolidation of the actions satisfies the provisions of Rule XIII of the Rules of Practice and Procedure for Trial Courts in this State. It is, therefore, unnecessary to discuss the common-law rule, which for many years prior to the promulgation of Rule XIII was, and still is, inherent in the practice and procedure of this State, that there is a wide discretionary power in trial courts to consolidate law actions, where such consolidation does not prejudice the rights of the parties to the actions consolidated. See *Beach* v. *Woodyard,* 5 W. Va. 231; *Wyatt* v. *Thompson,* 10 W. Va. 645; *McKittrick* v. *McKittrick,* 43 W. Va. 117, 27 S. E. 303; *Castle* v. *Castle,* 69 W. Va. 400, 71 S. E. 385; *Bond* v. *National Fire Insurance Co.,* 77 W. Va. 736, 88 S. E. 389; *State for Use of, Etc., Randolph County Court* v. *Hudson Paving and Construction Co.,* 95 W. Va. 610, 122 S. E. 173; *Frantz Coal Land Co.* v. *Ansted Bank,* 110 W. Va. 46, 156 S. E. 838; 1 C. J. S., Actions, Section 110. For an exhaustive collation of authorities dealing with the question, see also the Annotation to *Ex Parte Ashton,* (Ala.) 165 So. 773, 104 A. L. R. 62 to 76, inclusive.

We are, therefore, of opinion that the trial court did not err in consolidating the three law actions, over the objections and exceptions of counsel for Clawges Transfer and Montgomery.

About six-thirty in the evening of December 24, 1951, the decedent, Thomas Orlie Fay, who had been in a roadhouse, known as "Trimble's Place", near the Town of Rivesville in Marion County, where beer was dispensed, left in a Nash sedan, Model 1946, and proceeded along United States Route No. 19 in the direction of Fairmont.

At a point two or three miles south of the Town of Rivesville, he was killed as the result of a collision between his automobile and a truck owned by Clawges Transfer, and driven by Montgomery. As the two vehicles proceeded along Route No. 19, the truck was being driven in a northerly direction from Fairmont to Rivesville and Morgantown, and decedent's Nash sedan was being driven in a southerly direction to the point where the vehicles collided. The evidence bearing on the operation of the two vehicles and the physical facts testified to by the investigating officers and other witnesses, who arrived at the scene of the accident shortly after the vehicles had collided and had come to a stop, is in conflict.

According to Montgomery's testimony, he was driving the Dodge truck of Clawges Transfer in a northerly direction from the City of Fairmont toward the Town of Rivesville at a speed of thirty to thirty-five miles an hour; that the truck was a comparatively new one, and had a governor installed on it adjusted so as to limit the speed of the truck to thirty-five miles an hour; that as the truck passed over a small knoll on the highway, witness saw a car approaching him about fifteen or twenty feet from the truck and travelling in the center of Route No. 19; and that upon observing the oncoming Nash sedan travelling in the center of the highway, he immediately turned his truck sharply to the right, so that the right front and rear wheels of the truck were on the right berm of the highway in the direction in which the truck was travelling. This witness testified that by reason of the fact that the Nash sedan was being driven in the center of the highway, he was unable to avoid a collision, and that as the result of the collision witness says he lost consciousness, and did not regain it until two days later.

The owner of the truck, A. I. Clawges, testified in corroboration of Montgomery that the truck was equipped with a governor, which was adjusted so as to limit its speed to thirty-five miles an hour. This witness testified that when he arrived at the scene of the collision about

a half an hour after it occurred that he observed a Nash sedan, evidently the one driven by decedent, on Route No. 19 about two or three miles south of Rivesville, the left front wheel of which was to the left of the center of the highway facing in the direction of Fairmont, and with reference to the direction in which the Clawges Transfer truck had been travelling the witness observed oil and antifreeze on the right side of the highway, and that no appreciable amount of oil or antifreeze had escaped from the truck.

According to the testimony of Edgar James Hare, who was called as a witness on behalf of Montgomery, in the case of Montgomery against the administrator, he was driving a bus of the Blue Ridge Lines from Fairmont to Morgantown, and, arriving at the scene of the collision almost immediately after it occurred, he observed oil stains on the right side of the highway with reference to the direction in which the Clawges Transfer truck had been travelling, and that there was a tire tread mark on the berm on the right side of the highway with reference to the direction in which the truck had been travelling, leading over a small knoll immediately south of the place where the accident occurred, directly to the point where the truck had stopped after the accident occurred.

At the trial witnesses testified variously concerning the extent and location of debris on the paved portion of the highway, which was observed shorty after the collision. According to the testimony of some of the witnesses, including Sergeant E. D. Hamilton, a member of the Department of Public Safety, who had arrived at the scene of the collision about seven-fifteen in the evening, two other troopers, Rice and Parsons, arriving about the same time, these officers found at the scene of the collision Chief Deputy Sheriff Yeager and three other deputies. Other witnesses testified that the debris was principally on the right side of the highway with reference to the direction in which the truck was travelling.

Sergeant Hamilton testified that upon arriving at the scene of the accident, he observed the decedent's Nash

automobile across the white double center line of the highway, extending from a point one foot and six inches to the right of the center line, in which the Nash automobile had been travelling, where debris extended back across the center line to the left thereof in the direction in which the Nash sedan had been travelling, and back to the front wheel of the Nash automobile for a distance of fifteen feet, two inches. Sergeant Hamilton testified in contradiction of the witness Hare that the right berm of the highway had been frozen, so that it would have been impossible for the Clawges Transfer truck to have made a skid mark thereon: in fact, this witness testified that he had to scrape the dirt to ascertain where the paved portion of the highway on its right side, facing Fairmont, ended.

Trooper E. E. Rice, who with Chief Deputy Sheriff Lora Yeager, made the measurements under the direction of Sergeant Hamilton, corroborated Hamilton as to the place and extent of the debris on the paved portion of the highway.

Sergeant Hamilton testified that the paved portion of the highway at the place of the accident was twenty-one feet, six inches wide; that when he arrived at the place of the collision he observed the southerly post of a guardrail on the right of the highway facing in the direction of Fairmont, which was opposite the top of the brow of a hill a short distance to the south of where he saw the Nash sedan, the truck chassis and the body of the truck; and that from the last post of the guardrail to the place where he saw the Nash truck standing after the collision, there was a measured distance of fifty-one feet. As this measurement is in a diagonal direction, it would seem that the point of impact was slightly north of the brow of the hill. When Sergeant Hamilton arrived at the scene of the collision, he found the bed of the truck in a field off the edge of the road eighty-two feet from the place where the Nash automobile had come to a stop, and the truck chassis was eighteen feet from the bed of the truck measured in the direction of Fairmont, and was partly on and partly

off the paved portion of the highway, right of the center line with reference to the direction in which the truck was facing at the time of the collision. According to Sergeant Hamilton, he ascertained that the distance from the left front wheel of the Nash to the edge of the hard road was seven feet, and from the left rear wheel was ten and a half inches from the edge of the road.

The evidence introduced on behalf of the administrator is in direct conflict with the testimony of Montgomery and Clawges. The witness, Roy H. Purnell, testified that he was driving along a road, which formerly was a street car track, and came into Route No. 19 just behind the truck of Clawges Transfer about seven hundred feet south of the place of the collision; that at that time the truck was travelling about fifty miles an hour; and that the truck as it went over the brow of the hill was straddling the center line. This witness testified, "When he [Montgomery] went over that hill there, that is wheels was in half ways over the center line between that and the edge of the berm"; and after the truck had topped the brow of the hill the witness heard the crash and saw the lights flash in the air. This witness testified that he had been driving automobiles for thirty-seven years, and that he could estimate within two or three miles, from a stopped position, how fast a passing car was travelling.

It seems unnecessary further to detail the evidence in this case. We simply apply the rule in point 1 of the syllabus of *Fielder, Administratrix* v. *Service Cab Co.*, 122 W. Va. 522, 11 S. E. 2d 115, that: "Before directing a verdict in a defendant's favor, every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should be assumed as true which the jury may properly find under the evidence." This rule has been applied in *Boyce* v. *Black*, 123 W. Va. 234, pt. 1 syl., 15 S. E. 2d 588; *Wilson* v. *Co-Operative Transit Co.*, 126 W. Va. 943, 945, 30 S. E. 2d 749; *Adkins* v. *Raleigh Transit Co.*, 127 W. Va. 131, 135, 31 S. E. 2d 775; *Billy* v. *Powell*, 133 W. Va. 278, 282, 55 S. E. 2d 889;

*Laphew* v. *Consolidated Bus Lines,* 133 W. Va. 291, 294, 55 S. E. 2d 881; *Frampton* v. *Consolidated Bus Lines,* 134 W. Va. 815, 823, 62 S. E. 2d 126; *Spence* v. *Browning Motor Freight Lines,* 138 W. Va. 748, 77 S. E. 2d 806.

We therefore take as true the evidence in this case, which tends to show that as Montgomery drove his truck past the place where the witness Purnell was entering Route No. 19, the truck was being driven at a speed of fifty miles an hour; and that, as the truck proceeded for a distance of approximately seven hundred feet to the brow of the hill, it was within Purnell's sight and was being operated over the brow of the hill with the wheels straddling the center line. Likewise we must take as true the evidence which tends to show that after the collision the Nash sedan came to a stop on the proper side of the center line. Under this evidence we simply hold that it is for the jury to determine, as it did by its verdict, that decedent was killed as the proximate result of Montgomery's negligence in the operation of the Clawges Transfer truck. The trial court, therefore, in our opinion, did not err in refusing to give to the jury the peremptory instructions to find, respectively, for the defendant, Montgomery, and the defendant, Clawges Transfer, and in refusing to set aside the verdict and grant the defendants a new trial.

Error is assigned to the admission of the testimony of the administrator, Orlie Fay, as to decedent's earnings on three grounds: (1) That the evidence is violative of the hearsay rule; (2) that the testimony violates the rule of *res inter alios acta;* and (3) the testimony violates the best evidence rule.

Counsel for plaintiffs in error objected at the trial of the case to the introduction of the testimony of decedent's father as to the amount of decedent's wages on the ground that the testimony violated the hearsay rule. No objections, however, to the testimony were had at the trial on the grounds that the testimony violates the rule of *res inter alios acta* and the best evidence rule, these objections being raised for the first time on this writ of error, and the

evidence, the objections thereto, and the rulings of the trial court thereon were not included in a special bill of exceptions.

The objection to the testimony on the ground that its admission violates the hearsay rule is based on the assumption that the witness's knowledge was obtained from statements made to him by decedent concerning his wages. The record, however, does not support this assumption. On the contrary, the witness testified that he knew, and he gave the amounts of, his son's earnings for the years 1948, 1949, 1950, and 1951, because he was present for those four years on every occasion when administrator's counsel of record, Oakley K. Hopkins, elicited from the decedent the amounts he made for those years for the purpose of preparing decedent's income tax returns. Counsel for plaintiffs in error relies upon the statement of the rule. governing the admission of hearsay evidence contained in 7 M. J., Evidence, Section 195, that: "Hearsay evidence is excluded, because it lacks the sanction of an oath and the test of cross-examination, and facilitates the use of perjured evidence." This witness, in our opinion, was testifying from his own knowledge, which he acquired by being present at the times his son's income tax returns were being prepared, and the evidence does not, in our opinion, violate the hearsay rule.

The administrator's testimony does not violate the rule of *res inter alios acta*. Black's Law Dict., 4th ed. 1470, citing *Chicago, etc., R. Co.* v. *Schmitz,* 211 Ill. 446, 71 N. E. 1050, succinctly states the rule: "A thing done between others, or between third parties or strangers." In *Hartman* v. *Evans,* 38 W. Va. 669, 18 S. E. 810, a typical case arising in this jurisdiction in which the rule has been applied, this Court held that an issue as to whether a certain loan was usurious, evidence that the lender made usurious loans to other people is not admissible. See also *Hill* v. *Ansted National Bank,* 95 W. Va. 649, 123 S. E. 417. That which was ultimately sought to be established by the administrator's testimony was not the transaction between the decedent and his attorney, involving the preparation

of tax returns, but the testimony was introduced for the purpose of, and does, establish, at least for jury determination, the decedent's earnings for the several years covered by the testimony prior to his death; and the administrator testified as to his personal knowledge during the course of which he simply stated how he had obtained that knowledge.

Nor do we think that the administrator's testimony violates the best evidence rule. The record discloses that all of decedent's earnings were derived as an employee at the plant of Sharon Steel Company, located at Morgantown, during the four years concerning which the administrator testified. It has been suggested by counsel for the plaintiffs in error that prior to the institution of this action the plant of Sharon Steel Company had been removed from Morgantown. This suggestion, however, is not supported by the record. Nor does the administrator's testimony disclose that Sharon Steel Company had maintained payroll records covering the period of decedent's employment. If it had those records and they had been available, the payroll records would have been the best evidence, and the administrator's testimony might have been inadmissible on the ground that the testimony constitutes secondary evidence. This question we need not decide, as there is no showing in this record, and no apparent way from which a showing could have been made, that there had been or were in existence payroll records. So the best evidence rule is not applicable. In 7 M. J., Evidence, Section 122, it is stated: "If it [an original document or paper, the contents of which is sought to be proved by oral evidence] is not produced, and is not shown to have been destroyed or lost, and thus rendered incapable of production, then the just inference is that such paper never had an existence." As there was no showing in this record as to the existence of payroll records of Sharon Steel Company, the admission of the administrator's testimony did not violate the best evidence rule. "Before evidence can be excluded on the ground that it is secondary it must appear either from the nature

of the fact to be proved or by evidence introduced by the objecting party that there is higher evidence in existence, and of what that evidence consists." 32 C. J. S., Evidence, Section 780, and cases cited under note 52. Moreover, at the trial the only objection asserted was that it was hearsay. "If secondary evidence is not objected to on that ground, and is otherwise admissible, it may be admitted, and considered along with the other evidence in the case." 7 M. J., Evidence, Section 116.

For the foregoing reasons the judgment of the Circuit Court of Monongalia County is affirmed.

*Affirmed.*