FLORENCE WILSON *v.* CO-OPERATIVE TRANSIT COMPANY *et al.*

(No. 9451)

Submitted April 5, 1944. Decided June 16, 1944.

Rose, President, and Lovins, Judge, dissenting.

*Robert E. Bills* and *Wm. Bruce Hoff*, for plaintiff in error.

*Robert B. McDougle* and *Jay T. McCamic*, for defendants in error.

Riley, Judge:

In this action of trespass on the case, instituted in the Circuit Court of Wood County by Florence Wilson against

Co-Operative Transit Company, a corporation, whose office and principal place of business are located in Ohio County, and T. C. Staats, a resident of Wood County, plaintiff obtained a verdict for three thousand five hundred dollars for personal injuries which she claims she incurred as the result of a collision between an automobile, in which plaintiff was riding as Staats' guest, and a street car owned and operated by the Transit Company. Staats died after the verdict was rendered. To a judgment setting aside the verdict and dismissing the action, plaintiff prosecutes this writ of error.

The written opinion of the judge who set aside the verdict was to the effect that the Transit Company was not guilty of actionable negligence; that, if defendants were negligent, plaintiff was guilty of contributory negligence; and that venue was lost because of Staats' death. The judge who heard the trial resigned after the verdict was entered and recorded, and his successor set aside the verdict and entered the order of dismissal. In such case, the judge who set aside the verdict is not aided by having heard the trial and observed the demeanor of the witnesses, and his action will not be sustained unless it is fully supported by the record. *Shipley* v. *Virginian Railway Co.*, 87 W. Va. 139, pt. 4 syl., 104 S. E. 297; *Flinn* v. *Henthorne*, 114 W. Va. 807, 810, 173 S. E. 882; *Hendricks* v. *Monongahela West Penn Public Service Co.*, 115 W. Va. 208, 214, 215, pt. 1, syl., 175 S. E. 441.

Our first consideration of the facts must concern the primary negligence of defendants. The jury having found for plaintiff, her evidence should be most favorably considered and all conflicting evidence and reasonable inferences therefrom resolved in her favor. *Musgrave* v. *The Knights of the Ku Klux Klan*, 102 W. Va. 320, pt. 1 syl. 135 S. E. 185. See also *Tuggle* v. *Belcher*, 104 W. Va. 178, pt. 3 syl., 139 S. E. 653; *Fielder, Admx.* v. *Service Cab Co.*, 122 W. Va. 522, pt. 1 syl., 11 S. E. 2d 115.

The collision between defendant Staats' automobile in which plaintiff was riding and defendant Transit Company's trolley car occurred on Eoff Street, a short distance

north of the intersection of Thirty-third Street, in the City of Wheeling, West Virginia. Eoff Street runs in a northerly and southerly direction and Thirty-third Street in an easterly and westerly direction. At the point of collision Eoff Street from curb to curb measures approximately 30.2 feet. The distance between the east rail of the Transit Company's tracks on Eoff Street to that street's curb line varies from 10.71 feet to 12.1 feet, while that between the west rail and the west curb line varies from 11.47 feet to 14 feet. Located approximately 150 feet north of the intersection of Thirty-third and Eoff Streets and traversing Eoff Street were the two main tracks and a sidetrack of The Baltimore and Ohio Railroad Company, the distance from the northerly curb of Thirty-third Street extended across Eoff Street to the most northerly rail of the railroad tracks being 157.6 feet, while from the northerly curb line of Thirty-third Street to the "southernmost rail of the southernmost track of the steam railroad" the distance is 126.68 feet. The street car involved in the accident was 50 feet long and 8 1/2 feet wide, so that, placed upon the tracks on Eoff Street where the collision occurred, there were 9.18 feet between the easterly curb line of Eoff Street and the side of the trolley car nearest thereto.

Staats, Velma Taylor (who later married Staats), and Florence Wilson, Staats' sister, were en route from Parkersburg, West Virginia, to Pittsburgh, Pennsylvania; and just before the collision occurred, they were driving in Wheeling on Thirty-third Street in a westerly direction approaching the point where that street intersects with Eoff Street. Staats was driving the automobile and plaintiff was seated on the extreme right of the motor vehicle, while Velma Taylor sat between them.

All of the evidence introduced in behalf of plaintiff, bearing on the question of negligence, which conflicts with that of defendants is contained in the testimony of plaintiff and Mrs. Staats.

Plaintiff testified that the Staats automobile was stopped on Thirty-third Street, opposite a stop sign lo-

cated a short distance east of the street intersection; that as the automobile turned into Eoff Street, she looked north and saw defendant's street car on Eoff Street about 150 feet away, as it was crossing the railroad tracks and approaching in the direction of the intersection of Eoff and Thirty-third Streets; that Staats got a clear view of the approaching street car when the automobile was caused to drift down to the corner; that a milk truck was parked along the east curb of Eoff Street 25 feet north of the intersection; that Staats turned his automobile in a northerly direction and then into Eoff Street, tried to drive the automobile around the truck, but before he could get his car in motion and do so "the street car was upon us"; that as he started around the truck, the street car "crashed there"; that when the collision occurred the automobile was "practically stopped right back of the truck, or near the side of it, I believe he started to go around and was about the back end of the truck"; and that when Staats started around the truck the street car "had gotten right in front of us, if it had been me—I would have waited behind." Plaintiff further testified that shortly before the collision the motorman put on his brakes or "slid his wheels or something which made an awful noise"; and that the street car was going at a rapid speed "at least ten to fifteen miles an hour".

Velma Taylor (now Staats) testified that while Staats was driving his automobile on Eoff Street, it was on the street car tracks and at the time of the collision it was not in motion and was sitting diagonally on the tracks; that Staats turned the automobile to the right, and in order to avoid encountering the milk truck he then turned it to the left; that the street car was going "at least twenty miles an hour"; and that when it got within ten feet of the Staats automobile the motorman put on his brakes and tried to stop.

Staats, testifying in his own behalf, supports plaintiff's version of the collision. He testified that he stopped his car opposite the Eoff Street building line, east of a stop sign on Thirty-third Street which he noticed as he approached

Eoff Street, looked north and saw defendant's street car headed south on Eoff Street at the railroad tracks about 200 feet away; that he pulled around the corner at the intersection in second gear at "probably" ten miles an hour; that from the time he started to turn until the collision he saw the street car; that if he had intended to park around the corner he could have stopped behind a parked truck which he testified was probably thirty feet from the corner, but could not do so from where the turn was made, and, thinking he could drive in front of the truck, drove his car to the right and then to the left. He testified that, "It was in my mind the street car at that time was far enough away that I would have time to right my car and get ahead of the truck when I got hit". He further testified that at the time of impact the automobile was stopped and headed in a northwesterly direction, on either the east or both street car rails; that when he stopped his automobile on the tracks the street car was 20 to 25 feet away; that shortly before the collision the street car was travelling at the rate of ten miles an hour, and, when the vehicles were "very close together", the motorman attempted to stop the street car. All witnesses, both plaintiff's and defendants', of whom inquiry was made, testified that the right front of the automobile, including the right headlight, was damaged.

It is argued by counsel for plaintiff in their brief that the accident could have been prevented either by Staats or by the motorman had they maintained a vigilant lookout, because "each could have warned the other of their intention to continue ahead, or, at least of their presence. Both could have stopped. Both were negligent". We have not given an account of the testimony of the witnesses for defendant Transit Company, which differed in several material respects from that of witnesses whose testimony was offered in behalf of plaintiff. It suffices, we believe, to note that the company witnesses challenged plaintiff's version of the parked car, Staats' route of travel in turning the intersection, plaintiff's claim that Staats stopped at the stop sign, and several of the defense wit-

nesses contended that when the collision occurred, the Staats automobile was on the west side of Eoff Street. The jury's verdict sustained plaintiff's version, and our inquiry, therefore, must be whether plaintiff's evidence sustains the contention that both Staats and the Transit Company were negligent.

The evidential picture is that of two moving vehicles, approaching each other. The rate of speed of the automobile, according to Staats, was 10 miles an hour when it was driven into Eoff Street. According to testimony of plaintiff's witnesses, the street car was advancing at a rate of approximately 15 to 30 feet a second. Since the accident occurred about 25 feet from Eoff and Thirty-third Streets, the street car had travelled approximately one hundred and thirty feet from the railroad tracks where plaintiff's witnesses placed it when the Staats car was turning into Eoff Street from Thirty-third Street. It had travelled about 120 feet when the motorman applied his breaks. Hence, in time from four to eight seconds had been consumed by the street car in advancing from the Baltimore and Ohio Railroad tracks to the point where the motorman admittedly applied his brakes. Meanwhile, according to the testimony of plaintiff's witness, Velma Taylor (now Staats), the Staats car had proceeded from a point in the intersection of the two streets where the transit company's tracks on each of the streets intersect, to the northerly line of Eoff Street—a distance of approximately 10 to 15 feet—and had then turned right and then left to the point of impact, a distance of approximately 25 feet in Eoff Street. Or, if we take the testimony of defendant Staats, he saw the street car 200 feet away when he stopped his car "at this point here, more or less in line with the building line and sidewalk there on Eoff Street", so that during the time that Staats drove his automobile to a point in the intersection of the two streets, turned right into Eoff Street and maneuvered his vehicle first to the right and then to the left and stopped on the car tracks, the street car had traversed approximately 150 feet over a period of five

to ten seconds of time. It is admitted that the Staats car was five feet eleven inches wide, and, while the width of the milk truck is not shown, it is established that the distance from the easterly curb to the side of the street car on the track nearest that curb measured only 9.18 feet. Hence, it should have been apparent to Staats that he could proceed beyond the milk truck only by placing his car on the tracks in the path of the street car which he knew was approaching. That Staats had his automobile off the tracks is indicated by the testimony of Velma Taylor Staats in the following:

> "Q. What if anything was ahead of the Staats car? When it made that turn on this side?
> "A. There was a milk truck in here.
> "Q. And when he made this turn off the street car track in that direction where was the milk truck in reference to the front end of the Staats car?
> "A. The milk truck was in here. (Indicating).
> "The Court: Make a mark on the map.
> "A. And he came around, he couldn't get through there, *and he came back on the track* and stopped." (Italics supplied)

Counsel for plaintiff direct attention to the testimony of Velma Taylor (now Staats), wherein she stated that had Staats continued "going right", he would have encountered the milk truck and if he had not "turned his car to the left" the side of the automobile would have been on the track and the street car would have hit us on the side." This testimony, it is asserted, shows that the Staats car was "never—not even momentarily—off the street car tracks." But Velma Taylor (now Staats) also stated that when Staats "came on to the track" the car "was sitting diagonally, that way on the track." We are unable to understand how this position of the car could have been achieved without the automobile's leaving the car track and in going, first, to the right toward the easterly curb and then left toward the car tracks. That it did do so is further reflected in plaintiff's own

testimony that she would have waited behind the truck. Plaintiff's counsel insists that "she meant in the beginning she would have maneuvered the car to a point of safety behind the milk truck and waited there" and that "most favorably considered in support of the verdict her evidence will bear that construction." We cannot agree that plaintiff's statement warrants any such enlargement or amplification.

While a motorman operating a street car on an urban street is obliged to maintain a proper lookout, it has been held that "until such time as the risk of a collision became imminent, the motorman had a right to assume that the driver of the automobile approaching from behind the parked automobile would wait until the street car had passed before coming onto the track in order to avoid a collision with the street car". *English* v. *Georgia Power Co.*, 66 Ga. App. 363, 17 S. E. 2d 891, 895, (1941); 3 Blashfield, Cyc. of Automobile Law and Practice, Section 1930. Thus, until Staats drove his car on the tracks, there was no reason for the motorman to act. As the entire incident happened in the course of just a few seconds and in the light of plaintiff's testimony that the motorman attempted to stop the street car when ten feet away from the stalled automobile, it is obvious that Staats' operation of his car onto the tracks was so sudden that there could not have been sufficient interval of time to permit avoidance of the impact. Plaintiff's own version of the collision is conclusive of the emergency situation created by Staats, when she testified as follows:

"Q. When your brother started out around the milk truck, where was the street car then?
"A. I answered that question.
"Q. What was the answer?
"A. I said it crashed there."

It follows therefrom that liability in this case cannot be grounded upon an alleged failure of the motorman to maintain a proper lookout. Nor can we say that the collision in the instant case resulted from any failure of the motorman to give Staats a signal or warning. When

the automobile had reached the position of peril from Staats' unexpected act, all of the occupants of the motor vehicle were fully apprised of their danger, and consequently a warning would have been of no avail. It is axiomatic in the law of torts that no liability can be predicated upon an alleged duty where its performance would have availed naught. *Blackwood* v. *Monongahela Valley Traction Co.,* 96 W. Va. 1, pt. 1 syl., 122 S. E. 359. See also annotations *Bradley* v. *Minneapolis Street Railway Co.,* 161 Minn. 322, 201 N. W. 606, 46 A. L. R. 993, note pp. 1039, 1040; *Union Traction Co.* v. *Moneyhun,* 192 Ind. 288, 136 N. E. 18, 28 A. L. R. 211, note pp. 273-275.

In the circumstances of this case we think that plaintiff has failed to establish a *prima facie* case against the defendant Transit Company, and consequently its failure to call the motorman as a witness or to explain his absence raises no presumption against said defendant. "There is no presumption against a defendant's failure to call witnesses, or any particular witness, where the plaintiff, carrying the burden of proof has not made a *prima facie* case." *Cooper* v. *Upton,* 60 W. Va. 648, pt. 4 syl., 64 S. E. 523, 524. Accord: *Diotiollavi* v. *United Pocahontas Coal Co.,* 95 W. Va. 692, 700, 122 S. E. 161; see also annotation to *Stocker* v. *Boston & Maine Railroad,* 84 N. H. 377, 151 A. 457, 70 A. L. R. 1320, note 1326-1330.

Under the testimony Staats, however, may not be absolved from liability. Clearly, it was his act of driving his car on the track in front of the approaching street car which created the emergency, from which neither he nor the motorman could extricate himself, which was the cause of the collision. Under the evidence, however, there is nothing to indicate that until the emergency was created was there any cause for plaintiff to act so as to relieve herself from the consequences of any negligent act of her host. We therefore are of opinion that the circuit court erred in characterizing her conduct as contributory negligence.

The question of venue was not stressed upon this writ of error, evidently because of our holding in the case of

*Staats* v. *Co-operative Transit Co.*, 125 W. Va. 473, 24 S. E. 2d 916. At this point it seems well to state that since Staats' death occurred after the verdict was rendered and recorded, there was no abatement of the action and no revivor was necessary. Code, 56-8-1, provides, "Where a party dies * * *, if such fact occur after verdict, judgment may be entered as if it had not occurred". See also *Laidley* v. *Jasper*, 49 W. Va. 526, pt. 3 syl., 39 S. E. 169.

The circuit court, on motion of defendant, Co-Operative Transit Company, to set aside the verdict and award to it a new trial, sustained the motion in part by setting aside the verdict but dismissed plaintiff's action. We affirm the judgment in so far as it set aside the verdict as to said Co-Operative Transit Company but reverse it in so far as it dismissed the action, and as to Co-Operative Transit Company remand the case for a new trial. Since defendant Staats made no complaint of the verdict, the judgment, as to him, is reversed with direction that, upon remand, judgment be entered upon the jury verdict in plaintiff's favor against defendant Staats.

*Affirmed in part; reversed in part; and remanded with direction.*

ROSE, PRESIDENT, dissenting:

I would reverse the judgment of the circuit court, reinstate the verdict and enter judgment thereon in this Court. As I appraise the evidence it fairly raised a question of fact for the jury. This conclusion is supported by the judgment of the judge presiding at the trial in refusing to direct a verdict in favor of the defendants, whose estimate of the evidence is to be preferred over that of his successor who had nothing before him except a transcript of the evidence.

Judge Lovins concurs in this note.