Carlos Adkins, *An Infant, etc. v.* Raleigh Transit Company, Inc.

(No. 9605)

Submitted September 27, 1944. Decided October 24, 1944.

132

*McGinnis, Mann & Thornhill, W. A. Thornhill, Jr.,* and *Fletcher W. Mann,* for plaintiff in error.

C. R. *Harless,* for defendant in error.

RILEY, JUDGE:

In this action of trespass on the case, defendant, Raleigh Transit Company, prosecutes this writ of error to a judgment of the Circuit Court of Raleigh County in the amount of fifteen hundred dollars in favor of Carlos Adkins, an infant eighteen years of age, who sues by his next friend.

On March 27, 1943, plaintiff was injured at defendant's bus stop on North Fayette Street near its intersection with Main Street in the City of Beckley, by having his left foot either run over by the front wheel of defendant's bus or crushed between the wheel and the curb as the bus was driven to the bus stop. Plaintiff presented his case on the theory that while he was awaiting the arrival of the bus, he was pushed from the sidewalk into the street by a large crowd of people and was unable to get around the crowd because of its size or through it in an effort to regain the sidewalk; that he was in full view of the bus driver who, by the exercise of a high degree of care, which plaintiff claims a public carrier owes to its passengers, could have avoided injuring plaintiff. In defense, defendant asserts that plaintiff was not its passenger and therefore it was under a duty to use reasonable care only; that it did not fail to use such care toward plaintiff because plaintiff was pushed into the side of the bus as it reached the curb, and defendant had no opportunity to avoid hitting him; that plaintiff was guilty of contributory negligence in that he was pushed off the sidewalk as the result of his participation in wrestling with several boys, and thereafter failed to use a reasonable effort to regain his position on the sidewalk; that defendant's injury resulted from the act of third parties, either boys engaged in wrestling or the crowd on the sidewalk; and, finally, that the trial court erred in refusing to give defendant's instructions Nos. 1, 2, 3, 4, and 12.

The threshold question in this case is: What was the degree of care which defendant owed plaintiff? Plaintiff claims that because he was injured at defendant's bus stop, regularly established under an ordinance of the City of Beckley, and was contemplating boarding the bus, he was defendant's passenger, and therefore defendant owed to him the highest degree of care in the operation of its bus. Where such relation exists the carrier owes to the passenger the duty to use the highest degree of care compatible with the practicable operation of the vehicle. *Venable* v. *Gulf Taxi Line,* 105 W. Va. 156, pt. 1 syl., 141 S. E. 622; *Bennett* v. *Bartlett,* 110 W. Va. 478, 158 S. E. 712. But was plaintiff defendant's passenger? The relation of carrier and passenger has been held to exist where a plaintiff was injured while on the carrier's property for the purpose of boarding a train, street car or bus, as at the carrier's railroad station, street car station or bus terminal. *Kidwell* v. *Chesapeake & Ohio Railway Company,* 71 W. Va. 664, 77 S. E. 285; *Atkinson* v. *Dixie Greyhound Lines,* 125 F. 2d 237 (C. C. A. 5). But does such relation exist where, as in the case at bar, defendant's bus stop was at the sidewalk of a public street in the City of Beckley? While it may be true that plaintiff was standing there intending to board the bus, at the time he was injured he had not as yet been accepted by the bus driver as a passenger, or entered into the bus, or made any movement in actually attempting to board the bus or communicated his intention to the driver. He was simply a member of the general public, whose right on the public street bore no relation to his intention to board the bus. In these circumstances, we think, he was not defendant's passenger. In *Klovedale* v. *Ohio Public Service Co.,* 54 Ohio App. 244, pt. 2 syl., 6 N. E. 2d 995, the Court held:

> "The relationship of passenger and carrier in cases where busses are involved does not come into existence until the person intending to become a passenger does some physical act in respect to boarding the vehicle or that intention is com-

municated to the carrier's agent in charge, when the physical chance of boarding may be accomplished with safety to both contracting parties."

See also *Norfolk & Atlantic Terminal Co.* v. *Morris' Admx.*, 101 Va. 422, 44 S. E. 719; and for an excellent collation of authorities involving injury to intending street car passenger, see A. L. R., note following the case of *Villa* v. *Union Electric Railways Company*, 51 R. I. 384, 155 A. 366, 75 A. L. R. 282, note pages 285 to 296. Hence our conclusion of the initial inquiry is that defendant owed to plaintiff the duty to use only reasonable care compatible with the practicable operation of its bus.

The evidence of plaintiff and that of defendant, in all essential particulars, conflicts. In view of the jury's resolving this conflict in plaintiff's favor, we must, in the appraisal of this case, as every trial court should do in the consideration of a motion for a directed verdict, entertain every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, and assume as true those facts which the jury may properly find under the evidence. *Boyce* v. *Black*, 123 W. Va. 234, 15 S. E. 2d 588; *Fielder* v. *Service Cab Co.*, 122 W. Va. 522, 11 S. E. 2d 115.

John Stinson, aged fifteen, testified for plaintiff that he was seated on the left side of the bus in the first seat behind the driver, as it approached the bus stop; that when the bus was thirty-five or forty feet away he saw the crowd push plaintiff off the sidewalk; that there were eighty or ninety people on the sidewalk; and that when the bus "came in sight everyone rushed up there trying to get on it first". The witness further testified that plaintiff was sixty or sixty-five feet from the corner; that he did not see any boys playing or scuffling, but saw plaintiff trying to push himself back on the sidewalk through the crowd in order to prevent being hit, at which time the bus was approaching at about ten or twelve miles an hour. Ray Peters, aged fifteen, a witness for plaintiff, testified that as the bus approached the stop he was seated on its

left side three seats behind the driver; that the bus came down Main Street and then turned into North Fayette Street, and when it was about thirty feet away from plaintiff and in the middle of North Fayette Street, he saw the crowd, consisting of about seventy people, push plaintiff into the street. James Lemon, aged seventeen, also testified for plaintiff that he was on North Fayette Street awaiting the arrival of the bus, together with seventy-five or eighty people; that plaintiff was about sixty feet from the corner of Main and North Fayette Streets; that plaintiff was not scuffling or wrestling; that the bus was about thirty or forty feet away from plaintiff when he was pushed from the sidewalk. Pat Collins, aged fifteen, testified that he was at the door of the Raleigh County Bank along side of which the bus stop had been established; that witness started toward the bus stop in order to get on as the bus approached at ten or fifteen miles an hour; that there were a hundred or more people there; and that after making the turn the bus came in at an angle toward the stop.

Plaintiff testified that he was standing by the Raleigh County Bank at the bus sign, a distance of fifty or sixty feet from the corner, when he observed the bus turning around the corner. The sidewalk on which plaintiff was standing was about nine feet wide. North Fayette Street had a width of twenty-five or thirty-five feet. His testimony is that when he saw the bus turning the corner it swung out, then turned back toward him, and when the bus was about fifty feet away, just after it made the turn, the crowd pushed him off the sidewalk; that a youth named Ted Shanklin, who, as defendant attempted to show, was engaged in wrestling with plaintiff and other boys immediately before the arrival of the bus, slapped plaintiff on the back and walked away. Plaintiff further testified that, after he was shoved off the sidewalk, he had his left foot on the street and his right foot on the sidewalk; that he was in plain view of the driver; that the right front fender hit and knocked him down; that he

tried to get back on the sidewalk through the crowd after he was pushed off, but did not try to get around as the crowd was too large; and that the bus driver could have stopped the bus when plaintiff was pushed into the street. While trying to regain the sidewalk, he testified that he was facing the crowd.

R. A. Angle was defendant's bus driver. His account of the injury is that he drove the bus from Main Street to the bus sign farthest from the street intersection in order to leave room for another bus; that thirty or forty people were there awaiting the bus; that after reaching the center of North Fayette Street he was thirty or forty feet from plaintiff; that as he was stopping the bus plaintiff "was shoved * * * or stepped" into the street, at which time the bus was travelling about five miles an hour, at which speed the bus could be stopped within two feet. Defendant introduced other witnesses who testified to the effect that prior to his injury plaintiff was engaged in scuffling and wrestling with other boys, and that he was shoved into the street during the scuffling or by the crowd, just as the bus was driven up.

Applying the rule in *Boyce* v. *Black, supra,* and *Fielder* v. *Cab Co., supra,* to the record, the jury, in our opinion, had the right to believe that after the bus made the turn from Main Street into North Fayette Street, it proceeded toward the place where plaintiff was standing on the sidewalk at a speed of four to twelve miles an hour; that when the bus was thirty to fifty feet away, plaintiff was pushed off the sidewalk in full view of the driver by the crowd, and not as the result of his wrestling with other boys; that thereafter there was a sufficient interval of time within which by the exercise of reasonable care the bus driver could have averted injuring plaintiff; and that plaintiff by the exercise of reasonable care could not have regained the sidewalk either by going around or pushing through the crowd in time to save himself. The jury could thus have found defendant guilty of actionable negligence and plaintiff free from contributory negligence.

138

But even if the jury should have believed, as it had a right to do, that plaintiff had reached his perilous position on the sidewalk as the result of his own negligence in wrestling with other boys and could not have regained the sidewalk in time to avert injury because of the crowd thereon, the plaintiff nevertheless would be entitled to recover because, under the rule of *Boyce* v. *Black, supra,* and *Fielder* v. *Service Cab Co., supra,* the jury was entitled to believe that defendant's bus driver actually saw plaintiff in his position of peril and realized his helplessness, or actually saw plaintiff's situation and had reason to realize his peril, or by the exercise of reasonable care could have seen plaintiff in his perilous position and could have realized his helplessness in time thereafter to avert the injury. *Fielder* v. *Service Cab Co., supra,* 529, 2 Restatement of the Law, Torts, Negligence, Section 479.

Though under the evidence the jury could have believed that plaintiff was able, by the exercise of reasonable care, to extricate himself from his peril, nevertheless, he would be entitled to recover because there is evidence in this record to the effect that plaintiff was facing the crowd while he was trying to regain the sidewalk, which necessarily would put his back toward the approaching bus and therefore plaintiff may have been oblivious to his peril and unlikely to discover it in time to avert injury, and that defendant's bus driver actually saw plaintiff's situation, "and, under the circumstances, in the exercise of reasonable care, should have realized plaintiff's peril and, on such realization, could have avoided the injury." Pt. 4, syl., *Meyn* v. *Dulaney-Miller Auto Company,* 118 W. Va. 545, 191 S. E. 558, 560.

It follows from the foregoing that this case is one for jury determination and therefore the trial court properly refused defendant's instruction No. 1, which was peremptory.

Defendant's instruction No. 2 is abstract and too general in its phraseology. Moreover, it would have been fully covered by defendant's instruction No. 3, if given, which

fully and correctly states defendant's theory of the case. This latter instruction should have been given by the trial court in view of the fact that the record contains no other instruction covering its subject matter. The trial court properly refused defendant's instruction No. 4, which submitted to the jury the question of contributory negligence, because it presents to the jury the question whether plaintiff "deliberately" placed himself in a position of peril, in which he was injured, whereas there is no evidence that plaintiff voluntarily or deliberately stepped from the sidewalk. Defendant's instruction No. 12 contains matters not pertinent to the questions in issue. It asks the jury to determine whether defendant exercised reasonable care in the selection of its driver Angle, and whether Angle, with approximately twenty-seven years experience in the operation of motor vehicles without having had an accident, was an experienced motor vehicle operator. These matters, while shown by the evidence, were not placed in issue by the declaration and have no direct bearing on the question whether Angle in the operation of defendant's bus exercised the reasonable care required of him at the time plaintiff was injured. These extraneous matters render the instruction argumentative and fully justify the trial court's refusal thereof.

We perceive no error in this record other than the trial court's refusal to give defendant's instruction No. 3. Such refusal, in our opinion, constitutes prejudicial error. We therefore reverse the judgment of the circuit court, set aside the verdict and award a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*