Frank Billy

*v.*

Frank Owen Powell, *et al.*

(No. 10151)

Submitted September 13, 1949. Decided October 18, 1949.

Lovins, Judge, not participating.

*A. G. Mathews, Ambler, McCluer & Davis,* for plaintiffs in error.

*Lorentz C. Hamilton, Lorentz C. Hamilton, Jr.,* for defendant in error.

Riley, Judge:

This is an action of trespass on the case instituted in the Circuit Court of Calhoun County, by plaintiff, Frank Billy, against West Virginia Transportation Company, a common carrier, engaged in carrying passengers for hire, and the defendant, Frank Owen Powell, its bus driver. The defendants prosecute error to a judgment entered on the jury verdict for three thousand dollars.

The declaration alleges that on March 25, 1948, the day on which plaintiff is alleged to have been injured, the

defendant, West Virginia Transportation Company, was engaged in the business of carrying passengers by busses for hire between the Town of Sutton, in Braxton County, and the City of Parkersburg, in Wood County, via Grantsville, in Calhoun County; that on that day plaintiff purchased a ticket at Grantsville, and presented himself to the defendant, Frank Owen Powell, the bus driver, for transportation to Poling's Store, near plaintiff's home; that Powell, acting as the agent, employee and servant of the bus company refused to accept the ticket and to permit plaintiff to board the bus; that upon plaintiff's protesting against Powell's said action, and again demanding that Powell accept the ticket presented to him, and that he be permitted and allowed to enter the bus, the defendant bus company, acting through its said agent and not regarding its agreement and duties, again refused to allow plaintiff to board its bus, and the said Powell, acting within the scope of his employment and authority, but without any lawful right "deliberately climbed down from said bus, in which he had at such time been sitting in the driver's and operator's seat of said bus, and wrongfully, illegally, wilfully and maliciously made an assault upon the said plaintiff and seized him and forcibly and violently pushed and threw the said plaintiff with great force against a stone wall" thereby causing plaintiff to be severely, painfully and permanently injured, making it necessary for plaintiff to incur expenses "in the future and for the rest of his natural life" for medical attention, treatment, care and nursing; and that by reason of said injuries plaintiff has suffered, and will continue to suffer bodily pain and mental anguish, and as a further result of said injuries will be unable to earn a livelihood.

The defense is set forth in defendant's special plea No. 1, which alleges that plaintiff was intoxicated at the time he attempted to board the bus of the defendant corporation. By reason of this condition, the defendant Powell, refused to permit plaintiff to enter the bus, and thereupon plaintiff proceeded to use vile and profane language to the annoyance of the passengers then on the bus, and placed himself in such position so as to interfere with the

operation of the bus, in that Powell could not close the door and proceed on his scheduled route, and that Powell, intending to move plaintiff away from the door of the bus, in order that the bus might proceed on its route without interference, and that if there was any hurt or damage to plaintiff, it was occasioned by plaintiff's own conduct and not through any conduct of the defendant Powell.

The declaration and defendants' special plea clearly define the issue which was before the court and jury in this case.

As the verdict of the jury was in plaintiff's favor, we must, in the statement and the appraisal of the facts portrayed by this record, entertain every reasonable and legitimate inference favorable to plaintiff fairly arising from the evidence, considered as a whole, and assume as true those facts which the jury may properly find under the evidence and this assumption requires that any conflict in the evidence must be resolved in plaintiff's favor. *Fielder* v. *Service Cab Co.*, 122 W. Va. 522, pt. 1 Syl., 11 S. E. 2d 115; *Boyce, Admx.* v. *Black*, 123 W. Va. 234, pt. 1 Syl., 15 S. E. 2d 588; *Wilson* v. *Cooperative Transit Co.*, 126 W. Va. 943, 945, 30 S. E. 2d 749; *Adkins v. Raleigh Transit Company*, 127 W. Va. 131, 135, 31 S. E. 2d 775.

A short time before four o'clock on the afternoon of March 25, 1948, plaintiff and his companion, Robert Snider, bought bus tickets from the bus agency in Grantsville, plaintiff's ticket purported to entitle him to ride on the bus from Grantsville in Calhoun County to Jackson's Store in that county. When plaintiff and Snider endeavored to get aboard the bus, the defendant Powell, the bus company's operator, who was then seated in the driver's seat, refused plaintiff admittance on the ground that he was intoxicated, and told plaintiff that if he returned his ticket to the ticket agency, his money would be refunded. Although plaintiff says he was not intoxicated, he admitted that he had drunk one bottle of beer in the restaurant in Grantsville at the bus stop, and that he had drunk at Spencer, West Virginia, a short time before, several bot-

tles of beer, the number of which he could not recall, but stated he thought he had not drunk as many as a dozen bottles. From the testimony of a number of witnesses who saw him immediately before the alleged assault took place and who testified variously that they saw him "weaving" and bent over a counter in the restaurant, we must say that at the time plaintiff presented himself for transportation on the bus that he was so apparently and clearly intoxicated that the question of his intoxication was not one for jury determination.

At the time plaintiff presented himself at the bus, it was parked on a public street in the Town of Grantsville, for the purpose of discharging and receiving passengers with Parkersburg as its final destination. Its right side was parallel to and three or more feet from a narrow boardwalk, which, in turn, paralleled a stone wall. When plaintiff and his companion appeared at the door of the bus, Powell, noticing the former's condition, told him he could not enter the bus because he was intoxicated. This resulted in a heated exchange of words between the driver and plaintiff, variously said by the witnesses to be profane and vile on plaintiff's part, and, according to some witnesses, profane on the part of the driver. During the course of this wordy exchange, the bus driver said, in effect, to use the language of plaintiff's witness, Evelyn Westfall, a passenger on the bus, "If you give me any more of your lip, I am coming out to you," took off his glasses, laid them on the dashboard of the bus, stepped out of the bus, and, according to plaintiff, "pushed" plaintiff backwards. Defendants' witness, Fannie Yoak, a passenger on the bus, also testified that the driver removed his glasses, saying, "Now, don't give me any more of your lip, or I'll," and immediately went down the bus steps and the next she saw was plaintiff's head strike the stone wall. Defendants' witness, Florence Yoak, a bus passenger, saw the bus driver start out of the bus after saying, "If you give me any more of your lip, I will come out there." Witness, having turned her head so that she would not see "the rest of it," heard a noise and then saw plaintiff lying over against the wall and thought he was dead.

Defendant Powell denies that he struck or pushed plaintiff, but says that as he took off his glasses and stepped down from the bus, plaintiff, stepping back, caught his heel on the boardwalk, and fell against the wall. This witness denies Dr. Boling's testimony that Powell said to him shortly after plaintiff was injured, "Yes, I elbowed him into the wall"; and that after Dr. Boling had informed defendant Powell that plaintiff was seriously injured, Powell came to the doctor's car and said, "Doctor, I may have pushed him back." The defendant also denies the testimony of James A. Roberts, a member of the Department of Public Safety, who had investigated the incident, wherein the latter testified that defendant Powell gave him a written statement to the effect that "I put my glasses on the dashboard of the bus and got out to push him away from the bus. When I did push him he caught his heel against the boardwalk and fell against the rock wall, hitting his head."

Plaintiff testified that during the course of the argument between him and the bus driver, he "was standing right out just about even with the door when he come down. The door opened out this way [the record discloses toward the front of the bus] and I was standing about even with the door when he stepped down on the ground and grabbed hold of my coat there, or my shirt rather." Also, that because he was standing at the outer edge of the door, it could have been swung around, "I was not in the way of his door"; and, further, that the driver could have closed the door and moved his bus forward without striking witness. The defendant Powell and one of his witnesses, however, testified that plaintiff was standing so close to the steps of the bus that the door could not be closed without striking plaintiff.

Thus it is apparent that the evidence in regard to plaintiff's position with reference to the bus, and his possible interference with its movement, and defendant Powell's use or non-use of force, is in conflict. Under the ruling in *Fielder* v. *Service Cab Co., supra,* and cases to like effect heretofore cited, this conflict must be solved in plaintiff's

favor, and so solving it, we must say that defendant Powell did make the statements attributed to him by the doctor and the state trooper regarding force; that plaintiff's position with reference to the bus did not interfere with Powell's closing the door of the bus and driving it on its way; and that defendant Powell, evidently angered by the heated exchange of words, got off the bus, elbowed or pushed plaintiff backwards against the wall, with such force that the latter was rendered unconscious for some time, and, as this record discloses, suffered severe injuries, including a hematoma, or knot, on the back of his head, a dislocation partial of the first cervical vertebra upon the second vertebra, a cerebral concussion, a concussion of the spinal cord, and fractures of the fourth, fifth and sixth cervical vertebrae, in other words, a broken neck. The severity of plaintiff's injuries, which will be discussed later, were such that the jury could infer that even if plaintiff's position was such as to interfere with the movement of the bus, and if Powell pushed plaintiff in an effort, to remove him from that position, in doing so he did it violently and with unusual and unnecessary force.

This record discloses that as a result of the injuries heretofore stated, plaintiff was hospitalized for eighty-one days, during the course of which, and as he now does, according to his own testimony, he suffered severe pain. He was required for a long time to be placed in a cast which extended from his hips to near the top of his head, with small openings for his eyes, nose, mouth and ears. With sharp calipers driven in each side of his skull and by means of a rope and weight above his bed, his head was held up and his neck extended, thus relieving the pressure caused by the crushing of the cervical vertebrae. According to Dr. Boling, the crushing of the vertebrae creates such pressure on the nerves as to somewhat weaken the arms; that arthritic changes will probably ensue, and that due to maladjustment of the pivotal bone, his ability to turn his head from right to left is and will be slightly limited. Even at the time of the trial, plaintiff's head was held and supported by a brace.

Plaintiff's hospital expenses, physicians and nurses fees up to the date of the trial amounted to $1,652.00. This testimony of Dr. Boling, although it conflicts somewhat with the opinion testimony of Dr. Ralph H. Bosie, who based his testimony largely on X-rays taken by Dr. Boling shortly after plaintiff was injured, as well as X-rays taken many months after plaintiff was injured, must be taken as true under the ruling in the *Fielder* case.

Although no assignment of error is pressed here on the basis of excessiveness of the verdict, in passing we do not hesitate to say that the severity of plaintiff's injuries was such that they not only show that he was man-handled by defendant's bus driver, in an unnecessary and unconscionable manner, but these injuries, together with the expenses incurred by plaintiff, are such as to fully sustain the amount of the verdict.

As the threshold question in this case, plaintiff's status at the time he was injured is pertinent. If plaintiff was the bus company's passenger at the time he was injured, the carrier owed to him, as such passenger, the duty to use the highest degree of care compatible with the practical operation of the vehicle. *Venable v. Gulf Taxi Line,* 105 W. Va. 156, pt. 1 Syl., 141 S. E. 622; *Bennett v. Bartlett,* 110 W. Va. 478, 158 S. E. 712. But did the relation of carrier and passenger exist in this case? We think not. "The relation of passenger and carrier begins when one presents himself to a passenger station of the carrier, in readiness to be transported to his destination, under such circumstances of time, place, manner and condition that the carrier must be deemed to have accepted him as a passenger." *Kidwell v. Chesapeake & Ohio Railway Co.,* 71 W. Va. 664, pt. 1 Syl., 77 S. E. 285. The purchase of a ticket by plaintiff, if he made such purchase through his companion, did not alone operate to constitute plaintiff a passenger. Such purchase is not essential to the existence of the carrier and passenger relationship; but it may be considered "as one among other elements entering into the inception of such relation." *Kidwell v. Chesapeake & Ohio Railway Co., supra,* pt. 3 Syl. Here plain-

tiff, at the time he presented himself for passage on the defendant corporation's bus, was not standing at carrier's station, but he was standing at a place on a public street in the Town of Grantsville where the defendant corporation's busses were wont to stop to receive and discharge passengers. This record clearly discloses by a preponderance of the evidence, though there is some contradictory evidence, that at the time plaintiff sought to enter the bus, he was grossly intoxicated and was engaged, in a loud voice, in the use of profane, vile and abusive language. He was not indeed, to use the language in point 1, syllabus, of the *Kidwell* case, in a "condition that the carrier must be deemed to have accepted him as a passenger." It is well settled that the passenger in a railway car may lawfully be ejected therefrom by the use of such force as is reasonably necessary for the purpose, for disorderly conduct or for the use of profane or vulgar language, and the same rule applies to persons who are grossly intoxicated. 13 C. J. S., Carriers, Section 808. By the same token where the prospective passenger is grossly intoxicated and engaged in the use of vile and profane language, as was the plaintiff here immediately prior to his injuries, which condition and conduct were apt to disturb the passengers on the bus, the carrier may and, in the public interest, should refuse to receive such objectionable person for transportation. And it may be said that the carriage of passengers under its duty to serve the public generally and impartially as to persons, is not bound to accept as passengers unattended persons who are so intoxicated "as to affect their conduct or render them unable to care for themselves." 13 C. J. S., Carriers, Section 538, subsection b.; *Abernathy* v. *Missouri Pacific Railroad Co.*, App., 217 S. W. 568. And as the plaintiff did not present himself for transportation on defendant corporation's bus in a condition that the bus company must have been deemed to have accepted him as a passenger, he was not, in fact, a passenger under the holding in the *Kidwell* case, and we think the right of a carrier's employee to use reasonable force to eject an objectionable passenger from a carrier extends in like manner to prevent such person

from becoming a passenger. So in the instant case plaintiff was not defendants' passenger and Powell, acting in the interest of his employer in the latter's performance of its duty to the public, had the right to prevent plaintiff's entry on the bus, and that right extended to the exercise of reasonable force if the circumstances required. So the all-embracing factual question on this writ of error is: Did Powell use unreasonable force which proximately resulted in plaintiff's injuries? If plaintiff, as he contends, was not in a position with reference to the bus as to interfere with the closing of the door and the movement of the bus away, force was unnecessary, and Powell was not justified in alighting from the bus in order to get, either by force or otherwise, plaintiff away from his position at the door of the bus. But, if, as defendants claim, plaintiff's position did interfere with the operation of the bus he could be forcibly removed therefrom only by the use of reasonable force.

We are of opinion that this record on the factual question whether the defendant Powell used unnecessary force amply supports the verdict of the jury.

Defendants assign as error the trial court's action in rejecting evidence that certain tests had been made by the Department of Public Safety of West Virginia, of blood purportedly taken from plaintiff's body after he was injured, which defendants state conclusively demonstrated that plaintiff was intoxicated at the time he was injured. This assignment of error becomes moot, in view of our holding that plaintiff's intoxication was proved by a clear preponderance of the evidence. In passing, however, we do not hesitate to say that the evidence was inadmissible because there was no evidence tending to show that the blood tested was that of plaintiff.

Defendants also challenge on this writ of error the propriety of the circuit court's giving of plaintiff's instructions Nos. 3, 4, and 5, and the court's refusal of defendants' instruction No. 10.

Plaintiff's instruction No. 3 told the jury that "one in charge of a passenger bus has the right to preserve order

on such bus by refusing to admit, as a passenger thereon, one who is in fact intoxicated, but that he has no right to use unnecessary violence or force in keeping such passenger, or prospective passenger, from travelling * * * or getting thereon as such passenger." This instruction is challenged because: (1) It assumes that defendant driver used unnecessary force and violence; (2) it is abstract and misleading; (3) it leaves out essential elements as defined by the courts; (4) there is no evidence of unnecessary violence or force; and (5) it leaves out consideration of provocative words, profanity, and plaintiff's proximity to the bus. The instruction is abstract and does not contain a hypothesis covering all the theories of the case. We do not, however, think that it assumes unnecessary violence or is misleading. It correctly states the law as to the use of force to reject the admission of an intoxicated prospective passenger. If the assault was unwarranted, the fact that it was prompted by plaintiff's language and profanity is of no moment. Provocative words do not justify an assault. *Norfolk & Western Railway Co.* v. *Brame,* 109 Va. 422, 63 S. E. 1018.

Plaintiff's instruction No. 4 simply submitted to the jury the question whether Powell did use unnecessary force and violence in attempting to prevent plaintiff from becoming a passenger on the bus.

Plaintiff's instruction No. 5 submitted to the jury the question of damages, including whether plaintiff suffered permanent injuries, and whether any losses may occur in the future to plaintiff, "provided they are such as you believe from the evidence will actually result to plaintiff as the proximate damage of the wrongful act complained of." It also told the jury that defendants are liable for such injuries in such damages as they may believe plaintiff entitled "not to exceed the sum of twenty-five thousand dollars, the amount sued for." We see no error in this instruction. The record contains ample evidence as to permanent injuries, and as to future pain, suffering and lack of capacity; and this Court held in *Keathley* v. *Chesapeake & Ohio Railway Co.,* 85 W. Va. 173, pt. 8 Syl., 102

S. E. 244, that: "An instruction to the jury limiting the verdict, if for plaintiff, to the damages sued for, is not erroneous as suggestive of an improper basis of recovery."

No error, in our opinion, was committed by the trial court in refusing to give defendants' instruction No. 10, to the effect that if the jury should believe from the evidence that plaintiff was intoxicated, and that he thereby became reckless and indifferent to consequences, then the jury is instructed that his actions will not be excused. This instruction is fully covered by defendants' instruction No. 1 and No. 4.

And, finally, defendants assert as error the entry of an order dated November 18, 1948, directing that the sum of $337.00, be taxed as costs to cover Dr. Boling's fees for services as a witness, including his expenses from Tucson, Arizona, to Grantsville, West Virginia, and return. This order (November 18, 1948) appears in the Law Order Book of Calhoun County immediately before the court's order of November 19, 1948 (the order to which the writ of error was taken), overruling defendants' motion to set aside the verdict, and entering final judgment, with costs to plaintiff. Clearly, Dr. Boling is entitled, under Code, 59-1-16, on a per diem basis of $1.00, to $3.00 for his attendance at the trial, and to five cents a mile for travelling expenses from Parkersburg on the State line to the county seat at Grantsville and return, a distance of one hundred miles, or $5.00. In taxing the costs the Clerk should have included only the sum of $8.00 to reimburse Dr. Boling for attendance at court and travelling expenses, and any amount in excess thereof, the order of November 18, 1948, notwithstanding, should not have been included in the costs.

For the foregoing reasons, we sustain the verdict of the jury, reverse the final judgment complained of, and remand this case to the Circuit Court of Calhoun County with directions that judgment be entered in plaintiff's favor on the jury verdict, and that plaintiff be awarded costs in the circuit to be taxed in accordance with this opinion, so as not to include the expenses of Dr. Boling

for travel from Tucson, Arizona, to Parkersburg, West Virginia, and return, and the Court being of the opinion that the defendants have substantially prevailed on this writ of error on the question of costs, it is ordered that defendants be awarded their costs in this Court.

*Verdict of the jury sustained; judgment reversed; and case remanded with directions.*