N. F. RAEDER, *Administrator, etc.*

*v.*

ADRIAN SCONISH, *et al.*

(No. 10106)

Submitted January 31, 1950. Decided March 7, 1950.

Fox, JUDGE, dissenting.

*Stathers & Cantrall, John R. Morris,* for plaintiff in error.

*Steptoe & Johnson, Oscar J. Andre, Donald R. Wilson,* for defendant in error.

RILEY, JUDGE:

This is an action of trespass on the case instituted in the Circuit Court of Harrison County by N. F. Raeder, Administrator of the estate of Posey L. Montgomery, deceased, against Adrian Sconish and Mike Sconish, Jr., and William Anderson, to recover damages for wrongful death. During the trial it developed that Anderson, who was an employee of the Sconishs, had borrowed the latter's automobile and, at the time of the accident, was on a trip of his own. Upon completion of the testimony the circuit court, on motion of defendants and over objection and exception of plaintiff, directed a verdict for each of the defendants and entered judgment thereon. Plaintiff prosecutes this writ of error to the action of the court in overruling his motion to set aside the verdict and grant him a new trial as to Anderson and in entering judgment on the verdict.

The fatal incident occurred about 10:30 on the night of March 21, 1946, in front of the Blue Bird Cafe, which is located a short distance north of Ripley, West Virginia,

on United States Highway No. 21, facing the highway on the west side thereof. At that point there is a long very slight curve which extends for several hundred yards north and south of the cafe, the cafe being on the inside of the curve. The western berm extends over to the front entrance of the cafe. The highway, which is of cement construction, is eighteen feet wide. The north and south lanes are clearly defined by an expansion break in the center of the travelled portion thereof. The weather on that day was cold and clear, with the moon shining. The neon lights on the ridge and around the lower edges of the roof of the cafe, together with the lights from the front of it, cast some additional light across the highway. There was some water standing in low places along the eastern berm.

Montgomery and three companions, R. O. Barger, Paul S. Keen and Silas Switzer, were en route by automobile to Parkersburg to attend a labor meeting. Due to tire trouble, which developed in the vicinity of the Blue Bird Cafe, they decided to leave their automobile at the cafe and continue their journey to Parkersburg by bus. Inasmuch as there was some question about the bus schedule, the cafe not being a regular flag stop, and the further fact that the weather was cold, the four decided to watch by shifts. Shortly after Montgomery and Barger had replaced Keen and Switzer, the first watchers, the bus was sighted to the south. Montgomery, having a flashlight, began to wave it. The bus slowed down as it approached the place where the two men were standing and, according to Barger, came to a complete stop about a bus length beyond them. The rear of the bus after it was stopped was from one to ten feet north of a line projected along the north side of the cafe. Golden M. Warner, the bus driver, testified that the bus came to a stop with both of the right wheels on the paved surface of the highway; and that Montgomery came to the front of the bus before attempting to cross the highway.

Immediately following the stopping of the bus Barger and Montgomery, according to Barger, started across the

highway to assist their companions with the luggage. It appears that by this time Switzer and Keen, already aware of the arrival of the bus, had actually left the cafe with the luggage. About this time the automobile, being driven by the defendant, William Anderson, was nearing the scene of the accident from the north.

In order to appraise the action of the trial court in directing a verdict for the defendant and entering judgment thereon at the close of all the evidence, we deem it advisable, at the risk of making this opinion prolix, to state in some detail the parts of the evidence adduced at the trial by both plaintiff and defendant, bearing on the question under consideration herein.

The defendant, William Anderson, will hereinafter be referred to as the "defendant."

To show decedent's position on the highway at the time he was fatally injured, the plaintiff introduced the following testimony of the witness Barger:

"A. After the bus stopped we started across to get our bags. * * * We started to the west side of the road to get our bags and we got to the middle of the road and I looked to the left and didn't see anything coming and took one step and looked to the right and it looked like a yellow streak came down the road. Something coming very fast, and I jumped and barely escaped and as I started to turn around I heard the car strike something and as I turned around I saw Mr. Montgomery lying with his head and shoulders off the concrete on the east side of the road.

"Q. Now, when you first saw this object coming what was Mr. Montgomery's position?

"A. He was on my left, he had a flashlight and he was flashing to him to flag the bus and a little back of me.

"Q. Do you know how much back of you he was?

"A. I could not say exactly, possibly two or three steps. I started across the road a little before he did.

\* \* \* \* \* \*

"Q. With reference to the middle of the highway what was your position when you saw this yellow streak?

"A. I imagine I was one step from that line."

On cross examination regarding whether he or Montgomery had gone to the front of the bus, as the bus driver testified, Barger answered in the negative, and stated that, after the bus had stopped, "I started across and he [Montgomery] was a little behind me." In this regard his testimony is as follows:

"Q. You both started about the same time?

"A. Yes, sir.

"Q. And he was a step or two behind you?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. Can you tell us about how close the Sconish car came to you?

"A. It would be hard to estimate. I was looking at the west side of the road and all I could do to get out of the way. I could feel the wind as it passed.

"Q. As you started across you were traveling in a westerly direction?

"A. Yes, sir.

"Q. And facing the cafe?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. And you jumped or ran across and the Sconish car just missed you, is that about right?

"A. Yes, sir.

"Q. Was it about that time you heard the thud?

"A. Just about the time I cleared the car I circled and I heard the thud before I hardly turned around.

"Q. When you did turn around, Mr. Barger, were you then already off the concrete.

"A. Just about the edge of it. I might have had one foot off. [The western edge of the concrete.]

"Q. Was it about that time you heard the thud?

"A. Yes, sir.

"Q. Did the thud come before you turned around?

"A. Just about the time I was making this turn I heard it.

"Q. I asked you a little while ago about how far the Sconish car was from you when you saw it. Now I would like for you to tell us when you saw the Sconish car for the first time in what part of the road were you.

"A. I would say one step past the middle of the road."

Defendant's witness, Silas Switzer, who saw the Sconish car just about the time it passed the rear end of the bus testified: "* * * Just as I was in the doorway coming out I first saw a car flash by and in that moment the thud, and I immediately went across to where Mr. Montgomery was lying on the road." He further testified that the Sconish car went approximately 225 to 250 feet after the impact, and then was backed up to a position approximately 125 feet from where Montgomery was lying, and parked on the eastern side of the highway. This witness testified that on walking toward the place where the Sconish car was parked, he observed glass on the pavement. The first fragment of glass encountered was on the left side of the road between 40 and 45 feet from the place where decedent lay. The first scattering of glass, this witness testified, was approximately in the center of the left lane of the road and was scattered toward the left side of the road, the last fragment being closer to the

shoulder of the east lane. Barger testified that decedent immediately after the impact was lying about a bus length (thirty to thirty-five feet) behind the bus, and that decedent started across the highway "Pretty close to the spot where he fell. Apparently the car didn't knock him any distance." Switzer testified that immediately after the impact decedent's body was lying approximately "twenty or twenty-five feet behind the bus, immediately on the eastern edge of the pavement." He further testified that the Sconish car stopped approximately 125 feet from the place where decedent lay.

Plaintiff's witness, Paul S. Keen, testified that as he came out on the porch of the cafe, he heard the impact, and saw the Sconish car "bearing to the left and appeared to me as though it was letting off of the accelerator and pushing in on it." He testified that the scattered glass from the left headlight of the Sconish car was between 35 and 40 feet from the place where decedent lay, and extended possibly two feet "something like that" on the eastern side of the highway. Decedent's shoe, this witness testified, was lying near the edge of the glass on the same side of the highway. Keen estimated that the Sconish car came to a stop a distance of "two power poles" from the point of impact, "approximately 300 yards or so."

The defendant, who was driving the Sconish car, testified that the speed of the car as it approached the bus was forty miles an hour; that he "let up on the gas" when he was about 200 feet from the bus; that when he reached the point where he could definitely determine that the bus had stopped, he was going about thirty miles an hour; that he blew his horn when about 50 feet from the bus; and that when decedent was hit the Sconish car was going about twenty-five miles an hour. Members of the Department of Public Safety, who arrived at the scene shortly after the accident, testified that the legal speed limit at that place was then forty-five miles an hour.

Defendant testified that when the car, which he was driving, was opposite the bus, a man stepped into the

center of the road, and "I got scared and hit the gas and as I hit the gas I felt a jar"; that "I was right at the end of it [the bus]"; that Barger was ten feet in front of the Sconish car; that he brought his car to a stop between 25 and 30 feet beyond the bus on the right of the center of the highway in the direction of Ripley; that after the impact decedent was lying in the center of the highway; and that he saw the latter moved to the eastern edge of the road, his body being about 20 or 25 feet back of the bus.

Defendant's brother, George Richard Anderson, who was riding on the right side of the front seat, testified that as the Sconish car approached the bus it was going about thirty miles an hour, and then when it came even with the bus, the speed was reduced to approximately twenty-five miles an hour. This witness testified that after Montgomery was struck, the defendant "cut square and hit the gas and went about three car lengths and backed up opposite to him." The other occupant of the Sconish car, Eugene Herdman, who was sitting between the Andersons, was asleep at the time of the impact. He testified that upon being awakened by the thud, he noticed the defendant was about to bring the Sconish car to a stop, and after stopping it, defendant backed up about fifty feet on the right (west) side of the road, the automobile facing toward Ripley.

After some delay because of difficulty in obtaining an ambulance, decedent was taken to a hospital in Parkersburg, where shortly thereafter he died.

Some of the specific acts of negligence listed by plaintiff in response to defendant's request for a more particular statement of facts are: That defendant was negligent in driving the Sconish car to the left of the highway in the direction of Ripley, thereby striking plaintiff's decedent, who was lawfully on the eastern side of the highway; that defendant gave no warning signal of his approach; and that he failed to exercise the ordinary care and caution in approaching and passing a bus standing on the highway to avoid injuring persons seeking to board the bus. It is

important to note that there is the testimony in this case of no one who saw decedent and his position on the highway at the moment of the impact. As heretofore noted, Barger testified that at the time he jumped to avoid the oncoming car, he had one foot across the center line; and that decedent was two or three steps behind him as he started across the highway, which would be about six to nine feet. S. J. Patton, a member of the Department of Public Safety, who testified for defendant, said that defendant told him that, as the man leaped to safety, he (the defendant) "cut square"; and defendant's brother testified that the driver of the Sconish automobile "cut square [following the impact], and hit the gas and went about three car lengths and backed up opposite to him." The evidence is uncontradicted as to the location of the glass and that defendant's shoe was 40 to 45 feet from the place where decedent lay. There is substantial evidence in this record to the effect that decedent, immediately after the impact, was lying at least 20 to 35 feet behind the bus, either slightly off the concrete and on the eastern berm or near the eastern edge of the concrete.

With all deference to the learned trial court, in stating the reasons for his action in directing a verdict for defendant, assumed as true the testimony of defendant's witness Warner, the bus driver, that decedent went to the front of the bus before proceeding across the highway, which testimony is in clear conflict with plaintiff's evidence; and that decedent on returning to the rear of the bus, without first looking, went from behind the bus into the west lane in the path of the oncoming automobile. This latter assumption is in conflict with Barger's testimony to the effect that as he started across the highway decedent followed him two or three steps behind, according to Barger's direct examination, and a step or two behind, according to his testimony on cross examination. There is no reference in the trial court's statement to the testimony of plaintiff's witness Keen that, as he came out on the porch of the cafe, he saw the Sconish car bearing to the left; the testimony of Trooper Patton to the

effect that defendant told him he "cut square", as Barger cleared the Sconish car, and the impact with decedent followed. From the trial court's statement it appears that the court placed little or no reliance on the location of the glass in the center of the eastern lane of the highway, scattered in a diagonal direction toward the berm 40 to 45 feet from where decedent's body lay; and that the impact was sufficient to tear decedent's shoe from his foot and carry it that distance to the place where the glass was scattered on the highway.

Plaintiff contends that the evidence to the effect that immediately after the impact decedent's body was located at the eastern edge of the highway at least 20 to 35 feet behind the bus, and the scattered glass, together with decedent's shoe, having been observed 40 to 45 feet beyond where plaintiff's evidence shows decedent lay, should, on the motion for a directed verdict in favor of defendants, be taken as true. It is contended that the location of the glass and decedent's shoe 40 to 45 feet from where decedent lay, would justify an inference by the jury that the Sconish car was being driven at a high rate of speed, and the position of the body immediately after the impact, as shown by plaintiff's evidence, coupled with testimony to the effect that the car was seen to go in a diagonal direction toward the eastern berm, and that immediately prior to the impact defendant "cut square" would justify an inference by the jury that decedent at the time he was injured was on the eastern side of the center line of the highway.

On the other hand it is contended by defendant that Barger's testimony that as he "jumped" across the highway, in order to avoid the oncoming car and reached the western edge of the concrete he felt the "wind" from the car as it passed by, coupled with Barger's testimony on direct examination that decedent was two or three steps behind him as he stepped over the center line, and on cross examination one or two steps, gives rise to only one inference, namely, that at the time of the impact decedent was across the center line of the road and in the path of

the oncoming car, which, if true, of course, would have justified a directed verdict in defendant's favor.

In appraising the ruling of the trial court in directing a verdict in defendant's favor, we must apply the postulate contained in point 1 of the syllabus of *Fielder, Admx.* v. *Service Cab Co.*, 122 W. Va. 522, 11 S. E. 2d 115: "Before directing a verdict in a defendant's favor, every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should be assumed as true which the jury may properly find under the evidence." To like effect see *Billy* v. *Powell*, 133 W. Va. 278, 55 S. E. 2d 889, 892; *Boyce, Admx.* v. *Black*, 123 W. Va. 234, pt. 1 syl., 15 S. E. 2d 588; *Wilson* v. *Co-operative Transit Co.*, 126 W. Va. 943, 945, 30 S. E. 2d 749; and *Adkins* v. *Raleigh Transit Co.*, 127 W. Va. 131, 135, 31 S. E. 2d 775. Applying this rule, which is always applicable in a case where the trial court in a law action directs a verdict, we are of opinion that under a fair appraisal of the evidence in this case, the jury had the right to draw from the evidence every reasonable and legitimate inference favorable to plaintiff and fairly arising from the evidence; and, further, that it was the prerogative of the jury, and not of the trial court, to solve whatever conflict is portrayed by this record. That being so, we are of opinion that if this case had been submitted to the jury, it would have had the right to find that defendant was driving the Sconish car at an excessive, unreasonable, and dangerous rate of speed in the circumstances, without regard to reasonable control as it approached the standing bus; and that decedent was struck in the eastern lane of the highway two or three steps, or six to nine feet, east of the center line. So we think it was for jury determination whether defendant was guilty of primary negligence which proximately caused decedent's fatal injury, and likewise it was for the jury to find that decedent was not struck and injured as a result of his own contributory negligence.

For these reasons the judgment of the Circuit Court of Harrison County in directing a verdict for defendant and entering a judgment in defendant's favor thereon is reversed, the verdict set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*

Fox, JUDGE, dissenting:

I dissent from the opinion of the majority in this case, and my reason therefor will be found in that part of the majority opinion where the evidence of the witness Barger is quoted at some length. Barger was plaintiff's witness and, of course, the truth and accuracy of his testimony was vouched for by the plaintiff. Treating his testimony as true, there should be no reasonable doubt as to how the accident occurred. We may imagine, speculate and make conjecture as to how the accident might or could have happened; but in the face of a statement under oath as to how it actually did happen, we are not at liberty to indulge in conjecture, imagination or speculation. Barger's testimony clearly shows that when the accident, resulting in the death of Montgomery, occurred, the automobile being driven by the defendant Anderson was on the west, or right side of the highway in the direction it was traveling; that when it passed Barger it barely missed him; that he was then on the extreme western side of the highway, and may have had one foot on the western berm thereof; that just as he was turning his head he heard the impact of the automobile with Montgomery which caused his death. Barger and Montgomery were on the east side of the highway before the accident. When they started to cross the highway behind the bus, which occupied most of the east side of the paved portion of the highway, Barger led the way and Montgomery followed him a short distance behind, described as two or three steps in one statement, and one or two steps in another. Barger, when he was over the center of the highway looked to his right or north and saw an automobile coming. Instead of stopping in a safe place, he took the risk

of being able to cross the highway in face of the oncoming vehicle, and barely escaped being struck thereby. It is clear to me that Montgomery, being close behind Barger, took the same risk and lost his life. Perhaps his act was impulsive, but it was nevertheless negligence on his part which proximately contributed to the accident which resulted in his death. Being that character of negligence it bars recovery on the part of his personal representative.

The position of Montgomery's body after the accident and the presence of glass on the east side of the highway is of little significance. We can rarely give a reason for the position of a vehicle or an injured or dead person where physical forces are involved. Where there is nothing else to rely on, such evidence may be resorted to. In this case, however, we have testimony of plaintiff's own witness, the truth and accuracy of which is vouched for by him, which clearly explains how plaintiff's decedent lost his life. In my opinion, had the case been submitted to the jury, and a verdict in favor of the plaintiff returned, the trial court would have been compelled to set it aside. It is elementary that in such cases a directed verdict for the defendant is warranted. I would affirm the judgment of the trial court.